# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-11-00469-CR

---

**Angel Rene Miranda, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF CALDWELL COUNTY, 421ST JUDICIAL DISTRICT
NO. 2011-017, HONORABLE TODD A. BLOMERTH, JUDGE PRESIDING**

---

## O P I N I O N

A jury found appellant Angel Miranda guilty of three counts of aggravated sexual assault. *See* Tex. Penal Code Ann. § 22.021 (West 2011). The trial court sentenced Miranda to thirty years' confinement for each count, with the sentences to be served concurrently. Miranda raises two issues on appeal, asserting that the trial court erred in submitting a jury charge that (1) allowed the jury to convict him of aggravated sexual assault based on the law of parties and (2) allowed the jury to convict him on a less than unanimous verdict. Because we conclude that the jury charge was not in error, we affirm the judgments of the trial court.

## BACKGROUND

On April 5, 2009, Johnny Lozano and Joshua Jackson picked up fifteen-year-old K.B. from her home at around 10:00 at night.[1] Lozano and Jackson drove K.B. to a house that K.B. believed

---

[1] The facts recited herein are taken from the testimony and exhibits admitted at trial. We refer to the complainant by her initials in order to protect her identity.

belonged to Everett Rainey, another co-defendant. Lozano and Jackson went into Rainey's house while K.B. waited in the car. After approximately five or ten minutes, Lozano returned to the car and asked K.B. if she wanted to join them in Rainey's house. She stated that she did.

K.B. noted that five males were in the house, including Lozano, Jackson, Miranda, Rainey and Pedro Quintero. All five of the males were seventeen years old. Eventually Lozano made K.B. an alcoholic drink. K.B. stated that during this time, she had three alcoholic drinks, each of which got progressively "stronger and stronger." Lozano, Miranda, Rainey, and K.B. then drove to purchase marijuana from an unknown party. K.B. initially hesitated, but eventually joined the other three as they smoked marijuana in a convenience store parking lot. The group returned to Rainey's house and "rolled" another marijuana cigarette. Rainey said "Let's go into the closet in the other room, so we can smoke it." Miranda, Lozano, Rainey, Quintero, and K.B. proceeded to the closet while Jackson remained asleep on the couch. The group began smoking the marijuana in the closet when the "lights proceeded to flash off." It was at this point that the sexual assault of K.B. began.

K.B. initially felt Lozano's hand rubbing her back and bottom, then Lozano began to kiss her neck. Suddenly, K.B. felt another set of hands touching her. She attempted to push the hands away, but because she was heavily intoxicated, she was never able to defend herself. Then, one of the assailants grabbed her head and forced her to perform oral sex on him. While this was occurring, other assailants pulled down K.B.'s pants and began touching her. One of the assailants said "Pass that bitch over here," and then forced K.B. to perform oral sex on him. She continued to try to get away, but could not escape.

Eventually, the assailants pushed K.B. out of the closet and forced her on to the bed. As K.B. tried to get up, Quintero and another assailant pushed her back down. Quintero forced K.B. to

2

perform oral sex on him while calling her "vulgar names." Other assailants were sticking their fingers in K.B.'s vagina. Miranda then said "Pass that bitch over here. I want some of that," and forced K.B. to perform oral sex on him. By this point, other assailants began forcing K.B. to have vaginal intercourse. Someone pulled K.B.'s hair, and Miranda yelled out "Pull her hair again. It makes her suck better."

K.B. began to go in and out of consciousness. The assailants took turns forcing K.B. to perform oral, vaginal, and anal sex, often on two assailants at the same time. K.B. could hear the assailants laughing and taking pictures on their cell phones. K.B. could not always tell who was assaulting her at any given moment, though she did recall that during two distinct points in the assault, Miranda forced her to perform oral sex while other assailants forced her to have vaginal sex.

The assault progressed to the living room. The other assailants woke Jackson up, said "Look at this bitch here," and then shoved K.B. toward Jackson. Jackson forced K.B. to perform oral sex while the other assailants laughed and poured themselves drinks. K.B. began to gag, and eventually threw up. The assailants forced her into the bathroom, at which point Quintero said "Look at all that nut. We did this bitch good." The group walked away, laughing. While K.B. was trying to wash her face, Jackson came up from behind her and forced her to have anal sex. K.B. slipped and hit her face on the wall, but Jackson persisted in forcing her to perform anal sex.

After the assault was complete, Lozano said "Get her dressed." K.B. put her clothes back on and the assailants forced her back into Lozano's car. Lozano drove K.B. back to her home while Jackson attempted to force K.B. to perform oral sex in the back seat. K.B. stumbled into her home around 4:00 a.m. She curled up on a chair and fell asleep. That morning, she told her mother about the assault as outlined above. That day, K.B. was examined by a sexual assault nurse who obtained vaginal and anal swabs from K.B. The nurse took pictures of K.B.'s bruised eye and injured

3

shoulder. There was bruising and tearing in K.B.'s vaginal, anal, and perineal areas, and her genital area was so swollen that the nurse could not perform an internal examination.

Five days after the assault, detectives with the Caldwell County Sheriff's Office contacted Miranda. During a non-custodial interview, Miranda initially claimed that he was not at Rainey's house that night, then admitted that he was present but claimed he did not remember any sexual contact with K.B. Subsequent testing revealed that samples recovered from K.B.'s vaginal and anal swabs matched Miranda's and Jackson's DNA. DNA from Lozano and Quintero matched samples collected from a swab of K.B.'s breast. Miranda's DNA was also found on clothing worn by K.B. on the day of the assault.

Miranda was indicted for five counts of aggravated sexual assault for what could commonly be referred to as "gang rape." *See* Tex. Penal Code Ann. § 22.021(a)(2)(A)(v) (West 2011). Each count alleged that Miranda sexually assaulted K.B. through various forms of penetration, with the aggravating element that he acted in concert with another assailant who also sexually assaulted K.B. "during the course of the same criminal episode."[2] *See id.* Each count also alleged, as an alternative theory of liability, that Miranda was a party to the alleged aggravated sexual assault; i.e., that he encouraged, directed, aided, or attempted to aid other assailants in committing the gang rape. *See* Tex. Penal Code Ann. § 7.01(a) (West 2011) ("A person is responsible as a party to an offense if the

---

[2] Count I alleged that Miranda penetrated K.B.'s anus with his penis, Count II alleged that he penetrated her anus with his fingers, Count III alleged that he penetrated her vagina with his penis, Count IV alleged that he penetrated her vagina with his fingers, and Count V alleged that he penetrated her mouth with his penis. *See* Tex. Penal Code Ann. § 22.021(a)(1)(A)(i)–(iii) (West 2011) (defining anal, oral, and vaginal sexual assault); *see also Gonzales v. State*, 304 S.W.3d 838, 846–49 (Tex. Crim. App. 2010) (concluding oral, vaginal, and anal penetration are separate and distinct sexual assaults under section 22.021).

offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both).

The jury found Miranda guilty of Counts III, VI, and V, but was unable to reach a unanimous verdict on Counts I and II. *See supra* n.2. The trial court declared a mistrial with respects to Counts I and II and convicted Miranda of the remaining three charges. After a punishment hearing, the trial court sentenced Miranda to thirty years' imprisonment for each of his three convictions, with sentences to run concurrently. This appeal followed.

**STANDARD OF REVIEW**

The purpose of the jury charge is to inform the jury of the applicable law and guide them in its application to the case. *See Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996). The jury charge must allow the jury to determine the defendant's guilt in light of the evidence and the law. *Id.* Absent evidence to the contrary, we presume the jury followed the law provided in the charge. *Id.*

Our review of an alleged error in a jury charge involves a two-step inquiry. First, we determine whether there is indeed error in the jury charge. *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) (citing *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005)). Second, assuming that error existed, we determine whether the defendant properly preserved the error at trial. *Id.* at 350 (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)). If the error was properly preserved, reversal is required if there is "some harm" to the defendant. *Almanza*, 686 S.W.2d at 171. However, if the error was not properly preserved, the error must be "fundamental," meaning that it was "so egregious and created such harm that the defendant 'has not had a fair and impartial trial.'" *Barrios*, 283 S.W.3d at 350 (quoting *Almanza*, 686 S.W.2d at 171).

**DISCUSSION**

In two issues on appeal, Miranda argues that the trial court erred in its charge to the jury. Specifically, Miranda asserts that the jury charge improperly allowed the jury to (1) convict him of aggravated sexual assault on the theory that he was a party to sexual assault and (2) convict him on less than a unanimous verdict. Miranda did not preserve these alleged jury-charge errors at trial. Therefore, we will only reverse if the alleged error constitutes fundamental error such that Miranda was denied a fair and impartial trial. *Barrios*, 283 S.W.3d at 350 (quoting *Almanza*, 686 S.W.2d at 171). We will address each alleged jury-charge error separately.

**Party to offense**

In his first issue, Miranda claims that the jury charge allowed him to be convicted of aggravated sexual assault based on an invalid theory that he was a party to sexual assault. *See* Tex. Penal Code Ann. §§ 7.01 (defining party to offense), 22.011 (defining sexual assault), .021 (defining aggravated sexual assault) (West 2011). According to Miranda, the jury charge implied that if he was a party to a sexual assault committed by one of the other assailants, the jury could convict Miranda of aggravated sexual assault. *See id.* Thus, Miranda asserts that the jury charge improperly allowed him to be convicted for a more serious offense based on the theory that he was a party to a less serious offense. *See id.* § 7.01(b) (stating that "party to an offense" can be charged with same offense committed by other parties).

The jury charge in this case provides the following instruction on the "law of parties":

> A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.

6

> A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.
>
> Mere presence alone will not constitute one a party to an offense.

*See id.* The jury charge also provides the applicable definition of sexual assault, aggravated sexual assault, the relevant *mens rea*, and the State's burden of proof.

Finally, the jury charge provides the application of the law to the facts of this case. The first portion of the application paragraph recites the underlying sexual assault as follows:[3]

### Count Three

> Now, bearing in mind the foregoing instructions, regarding Count 3 of the indictment, if you believe from the evidence, beyond a reasonable doubt, that [Miranda] . . . did then and there intentionally or knowingly cause the penetration of the sexual organ of [K.B.] by the Defendant's male sexual organ, without the consent of [K.B.], by
>
>> compelling [K.B.] to submit or participate by the use of physical force or violence, or
>>
>> [K.B.] had not consented and the Defendant knew that [K.B.] was unconscious or physically unable to resist, or
>>
>> the Defendant had intentionally impaired [K.B.'s] power to appraise or control [K.B.'s] conduct by administering any substance without [K.B.'s] knowledge;[4]

---

[3] The jury instructions for Counts IV and V are substantially similar to the above language, with the exception that they refer the other forms of penetration that Miranda allegedly committed. *See supra* n.2. For convenience, we will discuss the jury instruction for Count III, though the analysis is the same for Miranda's remaining convictions.

[4] This language in the charge corresponds to the statutory definition of lack of consent. *See* Tex. Penal Code Ann. § 22.011(b)(1), (3), (6) (West 2011). The charge repeats this language verbatim for the aggravating element of working in concert with another actor who commits

The middle portion of the application paragraph sets forth the aggravating element of participating in a "gang rape" as follows:

> and during the course of the same criminal episode, [Miranda] acted in concert with another actor, or actors, to wit: [Rainey, Jackson, Lozano, or Quintero], who intentionally or knowingly caused the penetration of the anus or sexual organ of [K.B.] by the said co-actors' male sexual organ or fingers, without the consent of [K.B.], by
>
> . . . . [statutory definition of lack of consent. *See supra* n.4]
>
> or intentionally or knowingly caused the penetration of the mouth of [K.B.] by the sexual organ of [Rainey, Jackson, Lozano, or Quintero] without the consent of said [K.B.], by
>
> . . . . [statutory definition of lack of consent. *See supra* n.4]

The final portion of the application paragraph sets forth the theories of liability as follows:

> you will find the Defendant guilty of Aggravated Sexual Assault as alleged in Count 3 of the indictment and so say by your verdict. Or if you believe beyond a reasonable doubt, that [Miranda] . . . acting as a party, as that term has been herein defined in Paragraph VII, with intent to promote or assist the commission of said offense, did then and there encourage, direct, aid, or attempt to aid [Rainey, Jackson, Lozano, or Quintero] in the commission of said offense, you will find the Defendant guilty of the offense of Aggravated Sexual Assault by penetration of the female sexual organ of [K.B.] by the male sexual organ, and so say by your verdict.

Thus, the jury could convict Miranda either because he was the principal actor in the aggravated sexual assault alleged in the count, or was a party to the aggravated sexual assault alleged in the count.

_____

sexual assault in the course of the same criminal episode. *See id.* § 22.021(2)(v) (West 2011). For simplicity's sake, we have omitted the repeated definitions of lack of consent.

On appeal, Miranda asserts that this charge allowed the jury to convict him of aggravated sexual assault based on a finding that he was a party to a sexual assault committed by one of the other assailants. Miranda does not explain what language within the charge incorrectly states the applicable law. Thus, it is unclear in what respect Miranda believes the charge allows the jury to improperly convict him of aggravated sexual assault merely because he was a party to sexual assault.

Furthermore, our review of the charge shows that it correctly states both the law of parties and how that law applies to the aggravated sexual assaults in this case. *See id.* §§ 7.01, 22.021. The charge states that Miranda could be guilty of aggravated sexual assault based on either of two theories. First, he could be guilty as the principal actor, in that he penetrated K.B.'s vagina with his penis, while working in concert with another assailant who also committed sexual assault. Second, Miranda could be guilty as a party "to the commission of *said* offense," i.e., that specific count of gang rape, because he encouraged, directed, aided, or attempted to aid another assailant in committing that offense. Under the party theory of liability, Miranda would be guilty of Count III if he assisted an assailant who penetrated K.B.'s vagina with his penis, while that assailant worked in concert with another who also committed sexual assault.

Thus, the charge allowed the jury to convict Miranda either because he directly perpetrated the aggravated sexual assaults as alleged, or alternatively, that he was a party to the aggravated sexual assaults committed by one of the other assailants. Both of these theories of criminal liability are clearly stated in the jury charge, and are consistent with case law concerning the law of parties. Miranda cites to no authority, nor were we able to find any, that would indicate that a defendant cannot be convicted of this type of aggravated sexual assault as a party to the offense. Therefore, we conclude that trial court did not err in instructing the jury on the law of parties in this case.

Even if the trial court did err in instructing the jury on the law of parties, Miranda would still be required to show that the error was fundamental such that he was denied a fair and impartial trial. *Barrios*, 283 S.W.3d at 350 (quoting *Almanza*, 686 S.W.2d at 171). The evidence clearly supports Miranda's guilt as a principal actor, given that his DNA was found in the vaginal and anal swabs taken from K.B. the day after the attack and K.B. testified that Miranda forced her to perform oral sex on him while other assailants were performing vaginal sex. Thus, we conclude that any error in instructing the jury on the law of parties was harmless. *See Ladd v. State*, 3 S.W.3d 547, 564–65 (Tex. Crim. App. 1999) (citing *Black v. State*, 723 S.W.2d 674, 675 (Tex. Crim. App. 1986)) ("'[W]here [as in the instant case] the evidence clearly supports a defendant's guilt as a principal actor, any error of the trial court in charging on the law of parties is harmless.'"). Miranda's first point of error is overruled.

**Less than unanimous verdict**

In his second point of error, Miranda argues that the jury charge erroneously allowed the jury to convict him of aggravated sexual assault based on less than a unanimous verdict. *See* Tex. Const. art. V, § 13; Tex. Code Crim. Proc. Ann. art. 36.29(a) (West 2006) (requiring unanimous jury verdict in felony case). Specifically, Miranda asserts that because each of the assailants potentially committed five different versions of sexual assault, "the jury was ultimately provided 60 possible offense combinations" from which they could conclude that Miranda committed aggravated sexual assault.[5] According to Miranda, this "error in the charge was exacerbated by the inclusion of the law of parties," and thus "[i]t is unclear which offenses or combination of offenses the jury relied on in

_____

[5] This calculation is based on the assumption that Miranda was the principal actor for each of the three counts of aggravated sexual assault, and that the other four assailants each could have committed five separate sexual assaults. *See supra* n.2. For purposes of our analysis, we need not determine how many actual combinations of assailants and forms of assault the jury could have considered.

10

returning the guilty verdicts." Therefore, Miranda explains, the trial court erred in failing to instruct the jury that it had to return a unanimous verdict about how these offenses were committed.[6]

Miranda's brief appears to raise two separate issues concerning unanimity. First, Miranda asserts that the jury needed to agree about which assailant, in addition to Miranda, sexually assaulted K.B. and in what manner the other assailant committed sexual assault. This theory assumes that Miranda is the principal actor for each count, but the jury needed to unanimously determine which of the other four assailants also committed sexual assault and in what form. Second, Miranda appears to assert that the jury was required to unanimously agree about whether he was the primary actor or a party to the offense. We discuss each issue separately.

When assessing a jury-unanimity challenge, we examine the plain language of the relevant statute. *Jefferson v. State*, 189 S.W.3d 305, 311 (Tex. Crim. App. 2006). The purpose of this inquiry is to determine whether the legislature has created a single offense with multiple or alternate methods of commission. *Id.* Jury unanimity is required with respect to all essential elements of the offense at issue; however, the jury need not unanimously agree on the specific method of committing a single offense. *Id.*

*Unanimity as to identity of the other assailant*

As previously discussed, Miranda was charged with aggravated sexual assault based on the theory that he (1) committed sexual assault (2) while acting "in concert with another who engaged in sexual assault directed toward the same victim and occurring during the course of the same criminal episode." *See* Tex. Penal Code Ann. § 22.021(a)(2)(A)(v). The jury charge tracked the

---

[6] After instructing the jury on the five counts of aggravated sexual assault, the trial court's charge did provide a general instruction that the jury's verdict had to be unanimous.

statutory language, allowing the jury to convict Miranda as the principal actor if it found that he sexually assaulted K.B. while working in concert with one of the other assailants who also sexually assaulted K.B. during the same criminal episode. *Id.*

The court of criminal appeals has held that non-consensual oral, vaginal, and anal penetration are distinct offenses under section 22.021, and thus a jury must be unanimous in its determination of what form of penetration occurred. *Gonzales v. State*, 304 S.W.3d 838, 846–49 (Tex. Crim. App. 2010); *Martinez v.* State, 225 S.W.3d 554, 554 (Tex. Crim. App. 2007). However, aggravating factors that transform a sexual assault into an aggravated sexual assault, such as the assailant's use of a deadly weapon or threatening the victim with bodily harm, are only different methods or means of committing a single offense. *See Landrian v. State*, 268 S.W.3d 532, 533 (Tex. Crim. App. 2008) (concluding jury verdict did not need to be unanimous about which aggravating factor was proven in aggravated assault); *Nickerson v. State*, 69 S.W.3d 661, 671 (Tex. App.—Waco 2002, pet. ref'd) (concluding that use of deadly weapon and threatening victim with death are alternative means of committing aggravated sexual assault). Thus, the jury is not required to unanimously agree about which aggravating factor is present in an aggravated sexual assault, because the various aggravating factors do not constitute distinct offenses. *See Landrian*, 268 S.W.3d at 533.

Miranda relies heavily on the court of criminal appeals language in *Ngo v. State*, 175 S.W.3d 738, 744 (Tex Crim. App. 2005), for the proposition that a jury is required to return a unanimous verdict when the charge alleges separate violations of a single statute. In *Ngo*, the defendant was convicted of one count of credit card abuse based on the jury's general guilty verdict. *Id.* at 740; *see also* Tex. Penal Code Ann. § 32.31 (West 2011) (defining credit card abuse). The charge in that case included three separate paragraphs which alleged that the defendant (1) stole a credit card,

(2) received a stolen credit card, and (3) fraudulently presented a credit card to pay for goods. *Ngo*, 268 S.W.3d at 741. The court concluded that each paragraph alleged a separate criminal act that could be committed at different times, with different mens rea, and different actus reas, and thus the jury needed to unanimously agree about which alleged offense the defendant committed. *Id.* at 745. However, the court emphasized that unanimity is not required as to the manner and means of committing a single offense, and thus a jury is not required to agree about "*how* the defendant committed the specific statutory criminal act." *Id.* at 746.

Miranda cites to no authority, nor were we able to find any, supporting his claim that the jury is required to unanimously identify which assailant Miranda acted in concert with while committing aggravated sexual assault. Moreover, acting in concert with another assailant is listed in the same subsection as other aggravating factors, such as use of a deadly weapon or threatening the victim with death or serious bodily injury. *See* Tex. Penal Code Ann. § 22.021(a)(2)(A)(i)–(vi). Therefore, we find that acting in concert with another assailant, like exhibiting a deadly weapon, is an aggravating factor constituting a method or means of committing aggravated sexual assault. *See id.*; *Landrian*, 268 S.W.3d at 533; *Nickerson*, 69 S.W.3d at 667. Thus, we conclude that the jury was not required to unanimously agree about *which* other assailant Miranda acted in concert with or what form of sexual assault the other assailant committed.

*Unanimity as to principal actor vs. party to the offense*

Miranda also appears to argue that, based on the number of possible combinations of assailants and manners of assault, the jury should have been required to unanimously agree about whether he was guilty as the principal actor or as a party to the offense. As previously discussed, the jury was instructed that Miranda could be guilty of aggravated sexual assault based on either of

13

two theories. First, he could be guilty as the principal actor, in that he penetrated K.B.'s vagina with his penis, while working in concert with another assailant who also committed sexual assault. Second, Miranda could be guilty as a party to the offense if he assisted an assailant who penetrated K.B.'s vagina with his penis, while that assailant worked in concert with another who also committed sexual assault.

The court of criminal appeals has recently held that "it would be plainly absurd to require the jury to acquit the accused unless it can unanimously determine his status as a principal actor or a party, and if the latter, what his exact party accountability might be." *Leza v. State*, 351 S.W.3d 344, 357 (Tex. Crim. App. 2011). As the court explained, the provisions of section 7.02—the section of the penal code which defines party liability—does not contain elements of the underlying offense, but rather "describe alternative manners by which an accused may be held accountable for the conduct of another . . . ." *Id.* (citing Tex. Penal Code Ann. § 7.02). Thus, if the "evidence is compelling that an accused is guilty of every constituent element of the alleged penal offense—*either* as a principal *or* under some theory of party liability"—the jury is not required to unanimously determine what his "precise role" was in the offense. *Id.* at 357–58.

In this case, there was compelling evidence that Miranda was guilty of every element of the aggravated sexual assaults as a principal actor. K.B. testified that Miranda forced her to perform oral sex on him on at least two separate occasions during the assault. Furthermore, Miranda's DNA was recovered from K.B.'s anal and vaginal swabs. This constitutes compelling evidence that Miranda committed oral, vaginal, and anal penetration, and thus could be found guilty as the principal actor in this case.

Furthermore, K.B. testified that Miranda actively participated in the aggravated sexual assaults perpetrated by the other assailants, at one point encouraging another assailant to pull on

14

K.B.'s hair because it "makes her suck better." Given that all of these sexual assaults occurred during a single criminal episode with the assailants all acting in concert with each other, the jury could have reasonably concluded that Miranda's participation in certain aspects of the sexual assault made him a party to every form of aggravated sexual assault that occurred. Therefore, there is compelling evidence that Miranda was guilty of every element of this aggravated assault, both as a principal actor and party to the offense. *See id.*

Having concluded that the jury did not need to unanimously agree about which assailant Miranda acted in concert with, and because the jury was not required to unanimously agree about whether Miranda was guilty as a principal actor or party to the offense, we conclude that the jury charge in this case did not permit the jury to reach a less than unanimous verdict. Therefore, Miranda has failed to establish that there was an error in the jury charge. We overrule Miranda's second point of error.

### CONCLUSION

Having overruled Miranda's two issues on appeal, we affirm the judgments of conviction.

_____

Diane M. Henson, Justice

Before Justices Puryear, Henson and Goodwin

Affirmed

Filed:   December 28, 2012

Publish