# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00050-CR

**Reyes Anthony Sanchez, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF LAMPASAS COUNTY, 27TH JUDICIAL DISTRICT
### NO. 8755, HONORABLE JOE CARROLL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Reyes Anthony Sanchez of aggravated assault with serious bodily injury. *See* Tex. Penal Code § 22.02(a)(1). The trial court assessed punishment, enhanced by a prior felony conviction, at 11 years' imprisonment and ordered restitution in the amount of $24,741.90. *See id.* §§ 12.32 (punishment for first-degree felony includes life in prison or any term of not more than 99 years or less than 5 years plus up to $10,000 fine), .42(b) (establishing enhanced punishment range for second-degree felony offense if defendant previously convicted of felony). On appeal, appellant asserts that (1) the jury charge impermissibly allowed him to be convicted without a unanimous jury finding concerning his role in the crime, (2) the evidence was insufficient to sustain his conviction, and (3) the trial court erroneously admitted a witness's prior written statement into evidence. We will affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Appellant was charged with aggravated assault arising from a fight that occurred outside a Lampasas bar in the early morning hours of September 3, 2011. Witnesses at trial testified that the victim, Ben Maldonado, had been drinking at the bar before appellant and his brothers, Joseph Sanchez and Zackary Sanchez, entered the bar about 20 minutes before closing time. Shortly thereafter, a verbal altercation ensued between Maldonado and Joseph[1] because Maldonado (by his own admission) had physically assaulted Joseph a few months earlier. Maldonado testified that Joseph told him that "he was going to get back at me and he was going to take care of what we didn't finish." A waitress at the bar, Betty Fields, testified that Joseph also said that Maldonado would be "jumped" when he left the hall and that appellant cautioned his brother, "You don't tell him what we're going to do." Appellant, however, assured the bar manager, Mary Karcher, that "there's not going to be no problems."

When the bar was closing, the Sanchez brothers left the bar along with their cousin, Philip Ramirez, and a friend, David Cantu, who were at the bar prior to the brothers' arrival. Bar staff advised Maldonado to wait inside for awhile before leaving so they could walk him to his car. At that time, Maldonado obtained a knife from Fields's husband in order to protect himself, and about five to ten minutes after appellant's group left, he exited the building alone. Fields said she thought she had seen the group of five men drive away before she motioned for Maldonado to leave. She did not tell Maldonado what she had heard Joseph say about jumping him, but she followed Maldonado when he left the building. When she got to the door, she saw all five members of

---

[1] Because the brothers share the same surname, we refer to Reyes Sanchez as "appellant" and to his brothers by their first names to avoid confusion.

2

appellant's group "just coming everywhere on [Maldonado]." Fields yelled to her co-workers, "Them sons-of-a-bitches are waiting for him outside," which prompted several bar employees to come outside as the events unfolded.

Although Fields did not know their names at the time, she testified that the five men who had left together—later identified as appellant, Joseph, Zackary, Ramirez, and Cantu—began running toward Maldonado. As the men approached Maldonado, Fields saw him back away from them and saw Joseph grab him. Fields initially did not see a knife in Maldonado's hands, but she said he had it in his hand when Joseph made contact with him. After calling for her co-workers, Fields injected herself into the altercation in an effort to break it up.

In response to Fields's plea for help, several employees arrived on the scene. Warren Karcher, a bouncer at the bar, testified that he saw Maldonado running backwards while waving the knife in a defensive manner as four or five of the men were charging towards him. James Rhymes, who worked security at the bar, similarly testified that he saw Maldonado waving a knife while walking backwards as all five men in appellant's group chased him. Mary Karcher, the bar manager, was among the last employees on the scene. She also testified to seeing Maldonado backing up while waving a knife but could not provide any more details of the incident.

Valeria Garza, a bartender who was among the first bar employees at the scene, testified that she saw Joseph grab Maldonado by his shirt and a couple of other men—who she thought were appellant and Ramirez—began pursuing him as well. She testified that she heard appellant say that "it is a one-on-one thing. Let them fight one on one. [But it] [d]idn't end up happening that way because you can't pull out a weapon at a fight." She likewise saw four or five

3

people approach Maldonado as he waved a knife at them. As Maldonado was backing away, he appeared to be angry, and she heard him say, "What mother-fucker?" and "Come on mother-fuckers."

As Maldonado was retreating, almost all the witnesses testified to seeing him trip over debris in the parking lot and fall. He did not get back up, and Fields testified that the "worst" of the assault occurred while he was on the ground. At that time, witnesses said that Garza threw her body over Maldonado to shield him because "everyone was on top of him." Fields testified to having seen all five of the men kick Maldonado.[2] Rhymes testified that he saw all five of the men kicking Maldonado after he fell, but he could not say where each person was due to poor lighting. On cross-examination, Rhymes clarified that he could not definitely say that he saw anybody in particular hit or kick Maldonado "because so much was going on at that point in time." Mary Karcher also could not say which of the men hit or kicked Maldonado. Warren Karcher testified that

---

[2] Appellant argues that Fields's testimony was equivocal as to whether he actually participated in the assault on Maldonado. However, when read in context, Fields's testimony is only equivocal as to the actors' names. She did not equivocate on her prior assertion that all five men had assaulted Maldonado.

| | |
|---|---|
| Counsel: | And did Zachary [sic] kick Ben? Is that what you're saying? |
| Witness: | Yes, all of them were. |
| Counsel: | I know you keep saying "all of them," but I'm trying not to lump [appellant] in with everybody. I'm trying to get you to tell me what you saw. Was Zachary [sic] for sure in there? |
| Witness: | Yes. |
| Counsel: | Kicking? |
| Witness: | Yes. |
| Counsel: | All right. And, so, there must have been five there if you say he was kicking; is that accurate? |
| Witness: | Yes, sir. |
| Counsel: | All right. So you're saying [appellant] was kicking and Zachary [sic] Sanchez was kicking and Daniel Cantu? |
| Witness: | I guess. I don't know all of them's names. |

he did not see what happened to Maldonado because he was occupied calling 911 and thus could not say which of the men in appellant's group were involved in the fight.

At trial, Garza specifically recalled Ramirez punching Maldonado and Joseph kicking him and further testified that appellant "probably kicked [Maldonado] and hit him a few times." She also remembered someone picking up Maldonado's leg at one point and someone else stomping it, but at the time of trial, she could not recall who that was. Because she testified that she could not recall some of the specifics and that her memory was fresher when she provided a written statement to police, she repeatedly refreshed her memory by referencing her written statement. Even after reading her written statement, she said she could not recall whether appellant had kicked Maldonado. Garza's written statement, which was admitted and read to the jury over appellant's objection, reflects the following concerning appellant's participation in the altercation:

> We got outside and Joseph, [appellant], [Ramirez], and the guy in the flannel shirt were at the end of the parking lot and Joseph and his friends were like in a half circle around [Maldonado] and he was cornered because he really didn't have anywhere to go. [Maldonado] had a knife out and was waving it around trying to keep everyone back away from him and [appellant] was yelling, "fight him one on one."
>
> . . . .
>
> I had Joseph by his arm and he pulled away and then I grabbed him by his shirt. Joseph was slightly pulling away telling me to get off of him and let him go. I thought at that point that Joseph didn't really want to fight and he was just showing off in front of his friends until [appellant] started yelling, "Oh you want to pull out a knife mother fucker" and [appellant] started chasing Maldonado around the car.
>
> . . . .
>
> Joseph picked up [Maldonado's] leg and stomped [him] in the leg. I think it was the knee cap, but I was getting hit also and I couldn't tell for sure that it was the knee cap. I know for certain that it was Joseph that had the leg and stomped on it

5

though. [Ramirez] was by [Maldonado's] head on the right side, Joseph was in the middle . . ., and [appellant] was to the left of [Maldonado].

I was in the middle of them trying to get [Ramirez] off of [Maldonado's] neck and then [Ramirez] let go of [his] head and was delivering punches to the right side of [his] body and head. Joseph and [appellant] were kicking the shit out of [Maldonado] and [Ramirez] began to kick [him] also.

Maldonado testified that, at first, he only saw Joseph running toward him, and then Ramirez started pursuing him. He said he opened the knife before he walked out of the bar, but he put it in his back pocket and did not pull it out until he saw Ramirez swinging at him as if brandishing a knife. He said he did not see appellant doing anything at that time, but as the pursuit went on, he eventually saw appellant coming from the back, walking towards him. After he fell, he was temporarily knocked unconscious either by the fall or by being hit, but he recalled that when he regained consciousness, he saw appellant, Joseph, and Ramirez "beating [him] down." He specifically recalled seeing appellant's foot kick him, although he could not describe the shoe appellant was wearing at the time. Maldonado testified that his leg was broken during the altercation, requiring the installation of a titanium plate across his ankle and an extensive recovery period.

Upon being informed that police were en route, Zackary fled the scene on foot while appellant, Joseph, Ramirez, and Cantu fled the scene in a vehicle driven by Joseph. When police stopped Joseph's vehicle, they found a knife in his pocket, but no other weapons. Appellant had no cuts or abrasions on his hands, and his clothing was not torn or disheveled. However, it was discovered that both Joseph and Ramirez had been stabbed during the fight.

6

The case was submitted to the jury on the sole charge of aggravated assault, and the jury was instructed as follows:

> Each party to an offense may be charged with commission of the offense. A person is criminally responsible as a party to an offense if the offense is committed by their own conduct, by the conduct of another for which they are criminally responsible, or both. A person is criminally responsible for an offense committed by the conduct of another if acting with the intent to promote or assist the commission of the offense, they solicit, encourage, aid, or attempt to aid the other person to commit the offense. Mere presence alone will not constitute one a party to a crime. No person may be convicted of an offense unless each element is proved beyond a reasonable doubt.
>
> . . . .
>
> Now, bearing in mind the foregoing instructions, if you find from the evidence beyond a reasonable doubt that on or about the 3rd day of September, 2011 in Lampasas, Texas, the defendant, REYES ANTHONY SANCHEZ, did then and there intentionally, knowingly, or recklessly cause serious bodily injury to Benjamin Maldonado by punching or kicking Maldonado, which caused serious bodily injury; [o]r if you find from the evidence beyond a reasonable doubt that on or about September 3, 2011 in Lampasas, Texas, Joseph Sanchez or Phillip Ramirez intentionally, knowingly or recklessly caused serious bodily injury, and that the defendant, REYES ANTHONY SANCHEZ, did then and there, with intent to promote or assist the commission of said ASSAULT, solicited, encouraged, aided, or attempted to aid Joseph Sanchez or Phillip Ramirez to commit the offense, you will find the defendant guilty of aggravated assault as charged in [the] indictment.
> If you do not so find, or if you have a reasonable doubt thereof, you will find the defendant not guilty.

The charge also included a general unanimity instruction: "It is [the presiding juror's] duty to preside at your deliberations and to vote with you in arriving at a unanimous verdict."

After inquiring whether there was a lesser charge they could consider, the jury found appellant guilty of aggravated assault. The judge sentenced appellant to 11 years in prison. Appellant's motion for new trial was overruled by operation of law, and this appeal followed.

7

**DISCUSSION**

In four issues on appeal, appellant argues that (1) the jury charge erroneously allowed him to be convicted based on the law of parties if either of two persons was the principal actor without requiring the jury to agree as to which of the two was the principal actor; (2) appellant's conviction therefore violated the unanimous jury guarantee of the Texas Constitution;[3] (3) the evidence was insufficient to sustain appellant's conviction as either a principal actor or as a party to the offense charged; and (4) the trial court erroneously admitted Garza's written statement over appellant's hearsay objection. We will address these issues in turn.

*Jury Instructions*

In issues one and two, appellant contends that the disjunctive recitation of alleged principal actors in the application paragraph of the jury charge—himself, Joseph, and Ramirez—allowed the jury to convict him without requiring unanimity as to the specific assailant or assailants. This, he contends, deprived him of a unanimous determination that at least one of the named parties committed all the essential elements of the aggravated assault offense. *See Pizzo v. State*, 235 S.W.3d 711, 714 (Tex. Crim. App. 2007) (unanimous verdict helps ensure each juror

---

[3] In issue two, appellant also asserts that the jury's verdict violated the "substantial majority" requirement of the Sixth Amendment to the United States Constitution. However, this issue is not briefed and is therefore waived. *See* Tex. R. App. P. 38.1(i); *Lucio v. State*, 351 S.W.3d 878, 896-97 (Tex. Crim. App. 2011) (appellant's brief contained no argument or citation to any authority that might support argument, therefore court decided point of error was inadequately briefed and presented nothing for review "as this Court is under no obligation to make appellant's arguments for her"), *cert. denied*, 132 S. Ct. 2712 (2012); *Hankins v. State*, 132 S.W.3d 380, 385 (Tex. Crim. App. 2004) (because appellant did not provide any argument or authority in support of contention, it was inadequately briefed); *Aldrich v. State*, 928 S.W.2d 558, 559 n.1 (Tex. Crim. App. 1996) (appellant proffered no argument or authority with respect to claims, so court considered them inadequately briefed and as presenting nothing for review).

is convinced beyond reasonable doubt that prosecution proved each essential element of offense); *Ngo v. State*, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005) ("Under our state constitution, jury unanimity is required in felony cases, and, under our state statutes, unanimity is required in all criminal cases."). In essence, appellant argues that the trial court should have issued a charge requiring the jury to unanimously decide which individual was the principal for whose actions he is criminally responsible under the law of parties. Appellant did not object to the charge on this basis, however. Rather, appellant only objected to the sufficiency of the evidence to warrant the submission of a law-of-parties instruction. To whatever extent that appellant has preserved, or is required to preserve, his arguments for appeal,[4] we hold that there was no error in the jury charge.

The application paragraph required unanimity regarding appellant's culpability for the aggravated assault on Maldonado, but did not require unanimity as to the manner in which he was culpable—as a principal or party to one or more persons. There is no general requirement that the jury reach unanimous agreement on preliminary factual issues that underlie the verdict, such as the manner and means by which one offense was committed. *See Schad v. Arizona*, 501 U.S. 624, 632 (1991) (plurality opinion); *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991). Appellant was charged with one offense—the aggravated assault of Maldonado. The alleged theories of culpability as principal or party are merely alternate methods or means by which the appellant committed one charged offense, which does not require juror unanimity. *See, e.g.*, *Leza*

---

[4] "An appellant can raise a claim of error in the failure of the jury charge to require an [sic] unanimous verdict on appeal regardless of whether he made that objection in the trial court; the only limitation is that, if he made no trial objection, the record must demonstrate egregious harm before he may obtain appellate relief on that basis." *Leza v. State*, 351 S.W.3d 344, 356 n.45 (Tex. Crim. App. 2011) (citing *Ngo v. State*, 175 S.W.3d 738, 743-44 (Tex. Crim. App. 2005)).

*v. State*, 351 S.W.3d 344, 357 (Tex. Crim. App. 2011); *Miranda v. State*, 391 S.W.3d 302, 311-12 (Tex. App.—Austin 2012, pet. ref'd); *see also Jefferson v. State*, 189 S.W.3d 305, 313 (Tex. Crim. App. 2006) (distinguishing precedent requiring unanimity when statute defined three acts as *separate offenses* from statute that defined three acts as different means of committing *single criminal offense*); *cf. Cosio v. State*, 353 S.W.3d 766, 771-72 (Tex. Crim. App. 2011) (describing three scenarios requiring specific unanimity instruction: (1) repetition of same criminal conduct with different results; (2) one offense committed on multiple but separate occasions; and (3) separate offenses that violate different provisions of same criminal statute); *Francis v. State*, 36 S.W.3d 121, 124-25 (Tex. Crim. App. 2000) (unanimity issues arise when jury charge disjunctively submits two separate offenses rather than alternative means of committing single offense).

As the court of criminal appeals recently observed, "it would be plainly absurd to require the jury to acquit the accused unless it can unanimously determine his status as a principal actor or a party, *and if the latter, what his exact party accountability might be*." *Leza*, 351 S.W.3d at 357 (emphasis added). As the court explained, the provisions of section 7.02 of the Texas Penal Code, which defines party liability, do not contain elements of the underlying offense, but rather "describe alternative manners by which an accused may be held accountable for the conduct of another who has committed the constituent elements of a criminal offense." *Id.* (citing Tex. Penal Code § 7.02). Thus, if the jury determines that the accused is guilty of every constituent element of the alleged penal offense—"*either* as a principal *or* under some theory of party liability"—the jury is not required to unanimously determine what his "precise role" was in the offense. *Id.* at 357; s*ee also Miranda*, 391 S.W.3d at 311-12.

10

In *Leza*, the jury charge authorized the jury to convict the defendant if it determined that he was (1) the principal actor, (2) a party under section 7.02(a)(2) of the Penal Code (imposing criminal responsibility for soliciting, encouraging, directing, aiding, or attempting to aid commission of offense), or (3) a party under section 7.02(b) of the Penal Code (imposing criminal responsibility for felony co-conspirator). *See Leza*, 351 S.W.3d at 355. The court of criminal appeals held that the jury charge did not violate the defendant's right to a unanimous jury verdict even though the jury was charged disjunctively with three alternate theories of criminal culpability. *See id.* at 357-58. Appellant asserts his case is distinguishable from *Leza* because, with respect to the theories of party liability, the jurors in this case were not required to determine unanimously the specific person or persons who committed the constituent elements of the aggravated-assault offense against Maldonado. *See id.* at 357 (party liability provisions of Penal Code "describe alternative manners by which an accused may be held accountable for the conduct of another who has committed the constituent elements of a criminal offense"). We do not agree that *Leza* is distinguishable on this basis.

Leza makes it clear that multiple theories of party liability under section 7.02 may be listed disjunctively in the jury charge without running afoul of the constitutional unanimity requirement. That is what occurred in this case—there were two theories of party liability submitted to the jury—but the essential element that required the jury's unanimity was appellant's criminal culpability for the crime. *See Pizzo*, 235 S.W.3d at 714 (minimal essential elements of offense include defendant's culpability); *see also Ngo*, 175 S.W.3d at 745-47 (unanimity requires every juror to agree that defendant committed same, single, specific criminal act, but not *how* defendant committed specific statutory criminal act). The jury was not required to be unanimous concerning

the manner in which he was culpable—as the principal actor or as a party to the offense committed by either Joseph or Ramirez (or both). As explained in *Leza*, it is unnecessary that jurors unanimously agree on the *theory* of criminal culpability supporting their unanimous conclusion of appellant's guilt as either a principal or party for a single offense. *See Leza*, 351 S.W.3d at 357. A specific unanimity instruction is not required with respect to alternate theories of party liability because the theories are not conceptually distinct; rather, they are slightly different characterizations that can be given the appellant's particular conduct, each of which would make him guilty of the sole crime charged. Consequently, we hold that there was no error in the jury charge, and we overrule appellate issues one and two.[5]

### *Evidence Sufficiency*

In issue three, appellant asserts that the evidence is insufficient to support his conviction for aggravated assault either as a principal or a party. In reviewing the sufficiency of the evidence, we consider all the evidence in the record, both direct and circumstantial, properly or improperly admitted evidence, and evidence submitted by either the prosecution or the defense. *See*

---

[5]Appellant misreads *Leza* to hold that unanimity is required *unless* there is "compelling" evidence that the defendant is culpable under some theory of principal or party liability. In *Leza*, the court of criminal appeals observed, "Where, as is the case here, the evidence is compelling that an accused is guilty of every constituent element of the alleged penal offense—*either* as a principal actor *or* under some theory of party liability . . . we think it would be plainly absurd to require [jury unanimity as to his precise role]." *See Leza*, 351 S.W.3d at 357. The use of the term "compelling" in this passage, however, is merely illustrative hyperbole employed by the court to emphasize the absurdity of requiring unanimity when alternate theories of criminal responsibility are alleged for a single offense; it is neither a standard of review nor a condition precedent to forgoing a specific unanimity instruction when alternate methods or means of criminal responsibility for a single offense are charged. *Cf. Miranda v. State*, 391 S.W.3d 302, 312 (Tex. App.—Austin 2012, pet. ref'd) (considering unanimity discussion in *Leza* and concluding that compelling evidence existed concerning defendant's role as principal actor or party to offense).

*Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Moff v. State*, 131 S.W.3d 485, 489-90 (Tex. Crim. App. 2004). We review all the evidence in the light most favorable to the verdict and assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Jackson v. Virginia*, 443 U.S. 307, 313 (1979); *see Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). "In reviewing the sufficiency of the evidence to support appellant's participation as a party, we may consider events occurring before, during and after the commission of the offense, and may rely on actions of the defendant which show an understanding and common design to do the prohibited act." *King v. State*, 29 S.W.3d 556, 564 (Tex. Crim. App. 2000). Ultimately, our duty is to ensure that the evidence presented actually supports a conclusion that the appellant committed the crime that was charged. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007); *see Winfrey v. State*, 323 S.W.3d 875, 882 (Tex. Crim. App. 2010).

In the present case, there was testimony from three witnesses—Fields, Garza, and Maldonado—that appellant directly participated in the assault on Maldonado. There was also testimony indicating that appellant was aware of a pre-existing plan to "jump" Maldonado after he left the bar, and the jury could reasonably have inferred that appellant and his brothers and friends were waiting to confront Maldonado when they remained in the parking lot at least 5 to 10 minutes after the bar closed. There is also eyewitness testimony that appellant chased Maldonado and encouraged his brother to fight the victim. Because this evidence is sufficient to support the jury's verdict, we overrule appellant's third issue.

*Admission of Garza's Prior Written Statement*

In issue four, appellant contends that the trial court erroneously overruled his hearsay objection to Garza's prior written statement and allowed the statement to be read into the record as a recorded recollection. *See* Tex. R. Evid. 803(5) (excepting recorded recollection from hearsay rule). A trial court's decision to admit or exclude evidence is reviewed under an abuse-of-discretion standard. *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005). The trial court's ruling will be upheld "if it is reasonably supported by the record and is correct under any theory of law applicable to the case." *Id.*

The trial court determined that Garza's statement was excepted from the hearsay rule under rule of evidence 803(5), which states:

> A memorandum or record concerning a matter about which a witness once had personal knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness'[s] memory and to reflect that knowledge correctly, unless the circumstances of preparation cast doubt on the document's trustworthiness. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

Tex. R. Evid. 803(5). Appellant contends Garza's statement should not have been admitted under rule of evidence 803(5) because (1) Garza was able to remember many details from that evening and thus did not have insufficient recollection of events as required for admissibility under the rule, and (2) she could not vouch for the accuracy of the written statement, stating in response to a question about a specific entry that she could not "recall what [she] wrote because [she] had done it a year ago." Although appellant did not assert these precise arguments in the trial court or object to the entirety of the written statement as hearsay, our review of the record indicates that the trial court was

14

made aware that admissibility under rule 803(5) was at issue and admitted Garza's statement after reviewing the rule.[6] Therefore, this issue is sufficiently preserved for our review.

The record reflects that although Garza retained substantial recollection of some of the pertinent events, she repeatedly testified that she could not recall significant details of what occurred due to the passage of time. Even after attempting to refresh her memory by reviewing her prior statement, she testified that she could not recall significant aspects of appellant's actions during the incident or the perpetrator of specific actions that she had recalled occurring. It was not, as appellant alleges, simply a matter of testifying differently from the way the prosecution wanted her to testify; she specifically stated that she could not recall some of the events about which she was questioned. Conversely, Garza testified that she made the written statement near the time of the events and that her memory of the events was fresh at the time she made it. Although she could not remember all of the events recorded in the written statement after refreshing her memory, as trial counsel acknowledged at the time, she did acknowledge the accuracy of much of what was in the statement when asked, and she affirmed that she signed the statement and initialed the beginning and end of each paragraph in it at the time it was made and when the events were fresh in her mind. *Cf. Johnson v. State*, 967 S.W.2d 410, 416 (Tex. Crim. App. 1998) ("At the extreme, it is even sufficient

---

[6] Appellant objected to the admission of Garza's prior written statement on the grounds that it was cumulative of Garza's trial testimony and that it contained hearsay statements, which were stricken from the statement before it was admitted and read into the record. Appellant did not explicitly object to the statement itself as being hearsay, although his general hearsay objection prompted the prosecution to advocate the recorded-recollection exception to the hearsay rule. Although appellant never asserted that the statement did not meet the requirements for admissibility under rule 803(5), and counsel conceded that Garza had already "acknowledged everything that's in that statement," the proponent of hearsay bears the burden of establishing the applicability of an exception to the hearsay rule. *See, e.g.*, *Simien v. Unifund CCR Partners*, 321 S.W.3d 235, 240 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

if the individual testifies to recognizing her signature on the statement and believes the statement is correct because she would not have signed it if she had not believed it true at the time."); *Spearman v. State*, 307 S.W.3d 463, 470-71 (Tex. App.—Beaumont 2010, pet. ref'd) (trial court reasonably determined that witness vouched for statement's accuracy where witness identified his signature and initials on statement at trial and, although he testified he did not remember making statement, said he "must have"); *Wigiert v. State*, 948 S.W.2d 54, 59 (Tex. App.—Fort Worth 1997, no pet.) (written and signed statement admitted even though witness did not testify specifically that statement was accurate; she did not recant statement at trial, and statement was originally made to police "under circumstances that support its reliability").

Rule 803(5) allows the admission of a prior written statement if the witness has insufficient recollection at the time of trial to allow the witness to testify *fully and accurately*; the record in the present case supports the trial court's conclusion that, due to insufficient recollection, Garza could not testify fully and accurately. Moreover, no magic words are required to satisfy the requirement that the statement correctly reflects her past recollection of events. *See Wigiert*, 948 S.W.2d at 59 ("Absent any showing that the statement is inaccurate, the general tenor of her testimony shows sufficient truthfulness to support a finding that the statement correctly reflects the knowledge [she] had when she made it."). The circumstances of this case are not similar to *Lund v. State*, on which appellant bases his claim that the written statement was not shown to reflect Garza's personal knowledge correctly. *See* 366 S.W.3d 848, 856 (Tex. App.—Texarkana 2012, pet. ref'd) (witness conceded that "some" of writing was hers but she could not refresh her recollection due to medication she was taking, did not remember much of what was included in statement, and claimed that portions were not in her handwriting). Based on the record here, we conclude that the

16

trial court did not abuse its discretion in admitting Garza's written statement under rule 803(5).

Accordingly, we overrule appellant's fourth issue.

## CONCLUSION

For the reasons stated, we affirm the judgment of conviction.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Goodwin and Field

Affirmed

Filed:   August 15, 2013

Do Not Publish

17