

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00055-CR
_____

BRADLEY HIGGINS, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 271st District Court
Wise County, Texas
Trial Court No. CR21457

---

Before Sudderth, C.J.; Bassel and Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

## I. INTRODUCTION

Appellant Bradley Higgins appeals his convictions for aggravated sexual assault of a disabled individual. *See* Tex. Penal Code Ann. § 22.021(a)(2)(c). In three issues, Higgins complains that (1) the evidence was insufficient to support his convictions, (2) the trial court abused its discretion by denying his motion for mistrial, and (3) the jury charge permitted the jury to find him guilty on manners and means not alleged in the indictment. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

S.L. was the mother of three children: D.R. (1996), B.P. (1998), and M.L. (1999).[1] As early as six months old, B.P. showed signs of several mental health disorders. In response, he was admitted to Cook Children's Hospital and later transferred to the state hospital in Wichita Falls. By 2005, he had been discharged from the state hospital, returned home, and enrolled in school. The school assessed B.P., estimated his IQ at 55, and placed him in special education classes.[2]

---

[1]To protect the victim's anonymity, we use initials; for the same reason, we use aliases to refer to the victim's family. *See* Tex. R. App. P. 9.10(a)(3); 2nd Tex. App. (Fort Worth) Loc. R. 7; *McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

[2]B.P. remained in school until he was approximately twenty or twenty-one years old.

In the summer of 2008, S.L. met Higgins, and they began dating. Soon after, Higgins and S.L. were married, and he moved into S.L.'s home with her and her children. Higgins was aware of B.P.'s mental health and behavioral issues when he moved into the home.

Sometime in 2009 or 2010, Higgins started a new career as a long-haul truck driver, which took him all over Texas and around the country. Higgins's long-haul truck could accommodate two people, and when B.P. was between the ages fourteen and seventeen, he occasionally accompanied Higgins on overnight trips in the long-haul truck.

On or about January 1, 2019, while B.P.'s sister was home from work, she heard Higgins follow B.P. into B.P.'s bedroom. From her own bedroom, she heard B.P. say, "no," "I don't want to," "stop," and "get your balls out of my face." She then heard Higgins say, "if you suck it, I'll leave you alone." B.P.'s sister did not immediately confront B.P. or Higgins, but later that day, she told her mother what she had overheard. When S.L. arrived home from work, she confronted Higgins about his and B.P.'s statements in the bedroom. Higgins denied touching B.P. but provided no excuse or explanation for what was heard. S.L. told Higgins to leave the home, and she asked the fire department to change the door locks on her home. The next day, firefighters changed the locks but also told S.L. that she needed to contact the police because B.P. had made concerning statements about Higgins to them.

S.L. took B.P. to the hospital for a sexual assault nurse examination (SANE), and a SANE kit was collected. Police began an investigation, and Higgins was indicted in June 2019 for two counts of aggravated sexual assault of a disabled individual. On October 3, 2023, the State filed a notice of intent to offer extraneous offenses and bad acts attributed to Higgins. *See* Tex. R. Evid. 404(b); *see also* Tex. Code. Crim. Proc. Ann. art. 37.07. On November 13, 2023, one day before trial, the State filed a supplemental notice that included several newly alleged extraneous acts of sexual assault.

A jury trial commenced the next day, and B.P. testified that Higgins would rape him when they stayed in the long-haul truck overnight together. Specifically, B.P. explained that sometimes when they were in the long-haul truck, Higgins would put his penis inside B.P. and his mouth on B.P.'s "private part." B.P. further testified that Higgins also "raped" him when they were alone at home together. B.P. explained that, just like in the long-haul truck, Higgins would put his penis inside B.P. and his mouth on B.P.'s private part.

B.P. testified that, on the day that his sister overheard him and Higgins in the bedroom together, Higgins put his penis in B.P.'s anus five times and put his mouth on B.P.'s penis two times.[3] He further testified that Higgins took him to the ground and held him down before committing the sexual assaults.

---

[3]Although a SANE kit was collected, it was not sent for analysis. At trial, police Lieutenant Jed Moore testified that the purpose of DNA analysis is to look for

4

Several other witnesses, including law enforcement, mental health professionals, B.P.'s mother, and B.P.'s sister testified at trial. However, at the beginning of the second day of trial, the trial court went on the record outside the presence of the jury to address an issue that was relayed to it by one of the jurors. The juror notified the trial court, via a note passed to the bailiff, that she had received an overnight friend request on a social media platform from a third party who had been sitting in the courtroom gallery during the first day of trial. The juror's note further explained that she recognized the photograph associated with the account profile as someone who had been present in the courtroom and who may have been related to one of the witnesses from the first day of trial. The juror did not open or respond to the friend request. The trial court instructed the juror, via the bailiff, to continue disclosing to the trial court if anyone tried to contact her in any way, and it instructed the State to notify the third party who sent the friend request and the related witness that they were no longer permitted in the courtroom for the remainder of the trial. Higgins did not request that the trial court speak with the juror to determine the impact, if any, of the third party's contact, but he moved for a mistrial on the basis that the contacted juror may have been prejudiced, biased, or otherwise

---

semen but that he had "dropped the ball" by failing to obtain a DNA sample from Higgins for comparison purposes. The results of the SANE were not discussed at trial.

influenced by the improper contact.[4] The trial court denied his motion, and the trial proceeded.

At the charge conference, Higgins objected to the inclusion of certain definitions of "without consent" in the jury charge. Specifically, he objected to language from Subsections 21.011(b)(1) and (b)(2) of the Texas Penal Code.[5] Higgins argued that definitions from Subsections (b)(1) and (b)(2) were not alleged in the indictment. The trial court overruled Higgins's objection and submitted the unmodified charge to the jury. The jury found Higgins guilty of both counts and assessed his punishment at sixty years' confinement on each. The trial court sentenced him accordingly, and this appeal followed.

## III.  DISCUSSION

### A.  STATE OF THE EVIDENCE & JURY CHARGE

In his first issue, Higgins argues that the evidence is insufficient to support his convictions for aggravated sexual assault of a disabled individual. Couched in his first issue are two sub-issues, in which Higgins further attacks (1) the State's extraneous-offense notice as untimely and (2) the jury charge as permitting nonunanimous verdicts. Higgins failed to preserve his challenge of the State's extraneous notice, and

---

[4]Higgins moved for a mistrial without first requesting other curative measures.

[5]Section 22.011(b) of the Texas Penal Code defines fourteen circumstances in which a sexual assault is committed without the consent of another person. *See* Tex. Penal Code Ann. § 22.011(b)(1)–(14).

6

we disagree that there was insufficient evidence to support his convictions. Finally, we agree that there was error in the jury charge, but it did not amount to egregious harm.

### 1. State's Extraneous-Offense Notice

Higgins complains that the State's supplemental extraneous-offense notice—filed one day before trial—was untimely and thus deprived him of the ability to adequately defend himself. Because he did not raise this objection at trial, Higgins forfeited this complaint. *See* Tex. R. Evid. 103(a)(1); *see also* Tex. R. App. P. 33.1(a)(1).

### a. Applicable Law

"An extraneous offense is one that is extra, beyond, or foreign to the offense for which the party is on trial." *Sledge v. State*, 953 S.W.2d 253, 262 (Tex. Crim. App. 1997). Texas Rule of Evidence 404(b) provides that evidence of crimes, wrongs, or other acts may be admissible for purposes other than to "prove a person's character in order to show that on a particular occasion the person acted in accordance with the character" if, after a "timely request" by the defendant, "the prosecutor provide[s] reasonable notice before trial that the prosecution intends to introduce such evidence—other than that arising in the same transaction—in its case-in-chief." Tex. R. Evid. 404(b). Section 3 of Article 38.37 of the Code of Criminal Procedure defines "reasonable notice" by requiring the State to give notice of its intent to introduce extraneous-offense evidence "not later than the 30th day before the date of the defendant's trial." Tex. Code. Crim. Proc. Ann. art. 38.37, § 3.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion sufficiently stating the specific grounds, if not apparent from the context, for the desired ruling. Tex. R. App. P. 33.1(a)(1); *Montelongo v. State*, 623 S.W.3d 819, 822 (Tex. Crim. App. 2021). Further, the party must obtain an express or implicit adverse trial-court ruling or object to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Dixon v. State*, 595 S.W.3d 216, 223 (Tex. Crim. App. 2020). Because it is a systemic requirement, this court should independently review error preservation, and we have a duty to ensure that a claim is properly preserved in the trial court before we address its merits. *Dixon*, 595 S.W.3d at 223.

### b. Higgins Forfeited His Complaint of Untimely Notice

The record indicates that Higgins timely requested notice of the State's intention to use evidence of extraneous offenses at trial, and the State responded by filing a notice that listed twelve previous criminal convictions that it attributed to Higgins. However, the notice did not contain any allegations regarding extraneous acts of sexual assault. One day before trial, the State supplemented its original notice by listing seven extraneous acts of sexual assault that were allegedly perpetrated by Higgins on B.P. Yet, when the State sought admission of these extraneous acts at trial, Higgins did not timely and specifically object to their admission on the basis that the State had failed to provide him with proper notice. Accordingly, we hold that he

8

forfeited his proper-notice complaint for our review. *See Montelongo*, 623 S.W.3d at 822.

## 2. Sufficiency of the Evidence

Higgins next challenges the sufficiency of the evidence and contends that the State offered "uncorroborated and contested testimony." Because the applicable standard of review delegates the resolution of credibility issues to the jury, we disagree.

### a. Applicable Law

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021).

The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative

9

force when viewed in the light most favorable to the verdict. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Braughton*, 569 S.W.3d at 608.

A person commits aggravated sexual assault of a disabled individual, in relevant part, "if the person intentionally or knowingly (i) causes the penetration of the anus . . . of another person by any means, without that person's consent [or] (ii) causes the sexual organ of another person, without that person's consent, to contact or penetrate the mouth . . . of another person, including the actor" and "the victim is a disabled individual."[6] *See* Tex. Penal Code Ann. § 22.021 (a)(1)(A)(i), (iii), (2)(C).

### b. There is Sufficient Evidence to Support the Conviction

Higgins argues that the evidence was insufficient to support the jury's verdicts because (1) B.P. had a motive to lie, (2) there were inconsistencies in his testimony,

---

[6]"Disabled individual" means a person older than 13 years of age who by reason of age or physical or mental disease, defect, or injury is substantially unable to protect himself from harm or to provide food, shelter, or medical care for himself. Tex. Penal Code Ann. § 22.021(b)(3).

and (3) physical evidence, such as the SANE examination or DNA results, was not presented to the jury. Higgins's insufficiency argument lacks merit.

First, whether B.P. had a motive to lie goes to his credibility, and in our sufficiency review, we may not re-evaluate the evidence's weight and credibility or substitute our judgment for that of the jury's. *Queeman*, 520 S.W.3d at 622. Because the jury—as the sole judge of his credibility—was free to believe B.P.'s testimony, his supposed motive to lie has no bearing on our sufficiency analysis. *See Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010), *see also* Tex. Code Crim. Proc. Ann. art. 38.04.

Second, to the extent that there are discrepancies in B.P.'s testimony, or that of any other witnesses, we again note that the jury was the sole judge of the credibility of the witnesses at trial, and we defer to the responsibility of the fact finder to fairly resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from the facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789, *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We cannot usurp the jury's evaluation of a witness's credibility with our own. *See Queeman*, 520 S.W.3d at 622; *Guevara v. State*, 667 S.W.3d 422, 435–36 (Tex. App.—Beaumont 2023, pet. ref'd).

Third and arguably most consequential, because B.P.'s testimony as a disabled individual—standing alone—is sufficient to support a conviction for sexual assault, neither corroborating testimony nor physical evidence is required. *See* Tex. Code Crim. Proc. Ann. art. 38.07(a), (b)(3); *Brockman v. State*, No. 02-18-00327-CR, 2019

11

WL 4048872, at *1 (Tex. App.—Fort Worth Aug. 28, 2019, pet. ref'd) (mem. op., not designated for publication); *see also Guevara*, 667 S.W.3d at 435 (explaining minor victim's testimony alone allowed the jury to find defendant guilty).

B.P. testified that, in the family home, Higgins repeatedly put his penis in B.P.'s anus and his mouth on B.P.'s private part. B.P. testified that he did not consent to Higgins's assault and that Higgins had raped him. On its own, B.P.'s testimony can be sufficient evidence of Higgins's sexual assault. *See* Tex. Code Crim. Proc. Ann. art. 38.07(a), (b)(3).

And although not required, corroboration of B.P.'s testimony was presented to the jury. B.P.'s sister testified that she heard Higgins and B.P. together in B.P.'s bedroom. She heard B.P. say, "no, I don't want to; no, stop . . . [g]et your balls out of my face." B.P.'s sister then heard Higgins say, "[I]f you suck it, I'll leave you alone." Thus, even though B.P.'s accusations were uncorroborated by any physical evidence, his sister's testimony provided corroboration. Accordingly, deferring to the factfinder's resolution of any conflicting inferences in favor of the verdicts, we hold that the evidence is sufficient to support Higgins's convictions for aggravated sexual assault of a disabled individual. *See Braughton*, 569 S.W.3d at 608.

### 3. Verdict Unanimity

Finally, Higgins argues that the trial court erred by failing to instruct the jury that it had to unanimously agree on which criminal act provided the basis for each of his aggravated sexual assault convictions. He complains that the State presented the

12

jury with evidence of similar acts having occurred on different dates and that the jury was not instructed as to what evidence constituted extraneous-offense evidence versus evidence admissible for the purpose of conviction. Higgins asserts that without these instructions, it was impossible for the jury to differentiate the evidence that supported the allegations in the indictment from the evidence of extraneous offenses, and thus, the verdicts may not have been unanimous.

### a. Applicable Law

A jury must reach a unanimous verdict on the specific criminal offense that the defendant is alleged to have committed. *See Cosio v. State*, 353 S.W.3d 766, 771 (Tex. Crim. App. 2011). To be unanimous, the "jury must 'agree upon a single and discrete incident that would constitute the commission of the offense alleged.'" *Id.* (quoting *Stuhler v. State*, 218 S.W.3d 706, 717 (Tex. Crim. App. 2007)). Nonunanimity may occur when the State charges a defendant with one offense and presents evidence that he committed the charged offense on multiple but separate occasions. *Id.* at 772. In that situation, in order to ensure jury unanimity, the State is required—if requested by the defendant—to elect which of the multiple acts it intends to rely on to obtain a conviction. *See Owings v. State*, 541 S.W.3d 144, 150 (Tex. Crim. App. 2017).

Even when an election is not requested or required, the trial court, as part of its general duty to correctly instruct the jury on the law applicable to the case, has the responsibility to submit a jury charge that does not allow for the possibility of a nonunanimous verdict. *See Cosio*, 353 S.W.3d at 776; *see also Ngo v. State*, 175 S.W.3d

13

738, 748 (Tex. Crim. App. 2005) (en banc) (holding the defendant's failure to request an election does not eliminate his constitutional right to a unanimous jury verdict). Therefore, when the State presents evidence of multiple incidents of the same offense, the jury has to be instructed that it "must unanimously agree on one incident of criminal conduct (or unit of prosecution)" among those presented. *Cosio*, 353 S.W.3d. at 776; *see Arrington v. State*, 451 S.W.3d 834, 838 (Tex. Crim. App. 2015) (holding a jury charge deficient because it did not "specifically inform the jurors that they had to be unanimous as to which separate criminal act they believed constituted each count").

Moreover, when the evidence shows that a defendant committed the same offense on multiple occasions, a jury charge that includes a general-unanimity instruction informing the jurors that their overall verdict must be unanimous is not sufficient. *See Arrington*, 451 S.W.3d at 841, 845; *see also Gomez v. State*, 498 S.W.3d 691, 697 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (recognizing that "generic language regarding unanimity in the overall verdict is insufficient to ensure a unanimous verdict on a single incident" when the State presents evidence of multiple incidents of the same offense at trial); *Vernon v. State*, 571 S.W.3d 814, 827, 833 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd) (same).

Here, the jury charge contained two counts of aggravated sexual assault of a disabled individual: (1) Higgins's sexual organ penetrating B.P.'s anus and (2) B.P.'s sexual organ contacting or penetrating Higgins's mouth. The State presented

14

evidence that Higgins had committed the charged offenses on multiple but separate occasions, with each incident being a potentially separate offense and unit of prosecution. *See Cosio*, 353 S.W.3d at 776.

### b. Charge Error

Higgins argues that the lack of a specific-incident unanimity instruction in the jury charge constituted error, and we agree.

Because the State was not bound to the specific date alleged in the indictment—and the jury was instructed to that effect—the charge permitted the jury to rely on any of the multiple acts of sexual assault that occurred prior to the presentment of the indictment. *See Sledge*, 953 S.W.2d at 255–56; *Ramirez v. State*, No. 02-18-00131-CR, 2019 WL 238123, at *6 (Tex. App.—Fort Worth Jan. 17, 2019, pet. ref'd) (mem. op., not designated for publication). This created the risk that the individual jurors would rely on separate incidents of criminal conduct, which constituted different offenses or separate units of prosecution, committed by Higgins to find him guilty. The jury may have mistakenly believed that it had to be unanimous only about the offenses—not the specific criminal conduct constituting each indicted offense. *See Young v. State*, No. 04-18-00564-CR, 2020 WL 1695511, at *2 (Tex. App.—San Antonio Apr. 8, 2020, pet. ref'd) (mem. op., not designated for publication). To ensure unanimity, "[t]he judge's charge . . . need[ed] to instruct the jury that its verdict must be unanimous as to a single[-]offense incident or unit of prosecution among those presented." *Cosio*, 353 S.W.3d at 776. It did not do so.

15

Because the jury was not instructed that such incident unanimity was required, we conclude that the jury charge was erroneous. *See id.* at 772, 774; *Brown v. State*, No. 02-22-00190-CR, 2023 WL 4779490, at \*6 (Tex. App.—Fort Worth July 27, 2023, no pet.) (mem. op., not designated for publication) ("[B]ecause the State presented evidence that [the appellant] had committed a variety of sexual acts with [the complainant] on multiple but separate occasions, the trial court erred by failing to include a more specific unanimity instruction in the sexual-assault and indecency jury charges.").

### c. Egregious Harm Analysis

Nonetheless, the jury charge error did not cause Higgins egregious harm. While the jury charge as a whole and the arguments of counsel suggest harm, the state of the evidence demonstrates the unlikelihood of actual harm: the case turned on an all-or-nothing credibility determination.

At trial, Higgins did not object to the trial court's failure to include the unanimity instruction. When a defendant does not object, a constitutional jury-charge issue is not preserved and Rule of Appellate Procedure 44.2(a) is not triggered. *Cosio*, 353 S.W.3d at 776; *Phillips v. State*, 193 S.W.3d 904, 913–14 (Tex. Crim. App. 2006). However, "charge error is never forfeitable by a defendant's failure to object at trial." *Cosio*, 353 S.W.3d at 776. Instead, a failure to object controls only the type of harm analysis that will be applied. *Id.*

16

When a defendant does not object to the charge error, his convictions are subject to reversal on appeal only if he has suffered "egregious harm." *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). Egregious harm is established if the record shows that the appellant has suffered "such harm that [his] trial was not fair or impartial." *See Cosio*, 353 S.W.3d at 776–77. Charge error is egregiously harmful when it affects "the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Fulcher v. State*, 274 S.W.3d 713, 716 (Tex. App.—San Antonio 2008, pet. ref'd). "An egregious harm determination must be based on a finding of actual rather than theoretical harm." *Cosio*, 353 S.W.3d at 777.

We consider the following factors in evaluating harm: (1) the entire jury charge, (2) the state of the evidence, including contested issues and the weight of probative evidence, (3) the parties' arguments, and (4) all other relevant information in the record. *Almanza*, 686 S.W.2d at 171. The *Almanza* analysis is fact specific and performed on a "case-by-case basis." *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013).

### (1.) jury charge

Starting with the jury charge, the trial court provided the jury with a boilerplate unanimity instruction that stated the "verdict must be by a unanimous vote of all members of the jury." However, this instruction did little to ensure that the jury understood that it had to unanimously agree upon a single and discrete incident that

17

would constitute the commission of each offense alleged. Therefore, we conclude that this factor weighs in favor of a finding of egregious harm. *See Cosio*, 353 S.W.3d at 777 (holding jury charge permitting nonunanimous verdicts weighed in favor of reversal); *see also Arrington*, 451 S.W.3d at 841 (holding when trial court provided multiple generic unanimity instructions, none of which apprised the jury of the proper unanimity requirement, this factor weighed in favor of reversal).

## (2.) state of the evidence

The state of the evidence refutes the notion that any actual harm occurred. The parties' evidence—and Higgins's defensive theory—presented the jury with an all-or-nothing, he-said-he-said determination. B.P. maintained that, without his consent, Higgins's penis had penetrated his anus and Higgins's mouth had contacted B.P.'s private part. Higgins's defensive theory was that he did not commit any of the offenses and that there was reasonable doubt because B.P. was not credible and the practical circumstances surrounding the alleged sexual assaults did not corroborate his testimony. Higgins's defense was essentially of the same character and strength across the board.

Under such circumstances—where a complainant testifies about several instances of similar abuse and a defendant maintains that none of the instances occurred—there is little risk of a nonunanimous verdict. *See Nguyen v. State*, No. 14-18-00063-CR, 2021 WL 1881180, at *9 (Tex. App.—Houston [14th Dist.] May 11, 2011, no pet.) (mem. op., not designated for publication) ("The court of criminal

18

appeals has repeatedly emphasized that there is little risk of a non-unanimous verdict in cases such as this, where one side argues a theory of repeated sexual abuse, and the other side denies any abuse occurred."); *Rodriguez v. State*, No. 02-18-00057-CR, 2019 WL 406167, at *3 (Tex. App.—Fort Worth Jan. 31, 2019, no pet.) (mem. op., not designated for publication) ("[B]ecause the evidence reflected that there was a first incident (which [the complainant] testified about in detail) and almost-daily incidents thereafter (for which [the complainant] did not provide much detail or distinguish between), there is 'no remotely significant risk' of a non[-]unanimous verdict."); *Ruiz v. State*, 272 S.W.3d 819, 826–27 (Tex. App.—Austin 2008, no pet.) (holding that state of the evidence weighed against finding egregious harm when defendant did not argue that he was guilty of only some of complainant's allegations of sexual abuse but instead argued that he had not committed any of the alleged conduct, leaving the jury with an all-or-nothing decision).

The jury's verdicts reflect that it necessarily believed B.P.'s statements and rejected Higgins's categorical denial. *See Wesley v. State*, No. 06-20-00098-CR, 2021 WL 5931677, at *3 (Tex. App.—Texarkana Dec. 16, 2021, no pet.) (mem. op., not designated for publication) (holding that state of the evidence weighed against egregious harm when charge permitted nonunanimous verdict due to evidence of multiple breast-touching incidents but "the jury was faced with a 'he said, she said' situation" and "by finding [the defendant] guilty of indecency, [it] clearly rejected [his] defensive theory"). Had the jury believed otherwise, it would have acquitted Higgins

19

on all counts. *See Cosio*, 353 S.W.3d at 777–78. On this record, therefore, it is logical to suppose that the jury unanimously agreed that Higgins committed all of the separate instances of sexual assault. It is thus highly likely that the jury's verdicts were, in fact, unanimous. We conclude that the state of the evidence weighs against a finding of egregious harm.

### (3.) the parties' arguments

Unanimity was discussed, albeit cursorily, by the parties during closing arguments. Higgins mentioned unanimity in his closing argument and reiterated the requirement for a unanimous verdict. Likewise, the State touched on unanimity in its closing argument and urged the importance of a unanimous verdict. However, another portion of the State's closing argument risked advancing a nonunanimous verdict by blurring the lines of which discrete incident the jury may have agreed upon. The State argued, "[R]emember, it only has to be anytime within 10 years prior to the time of the indictment. You don't have to know the exact date. You just have to know that it happened sometime during that time, and every bit of the evidence shows that's what happened."

Although Higgins and the State discussed general unanimity with the jury, no one discussed the requirement for incident unanimity. Ordinarily, such lack of reference of incident unanimity would not weigh for or against an egregious-harm finding. *See Arrington*, 451 S.W.3d at 844 (treating factor as neutral when arguments of counsel neither contributed to nor ameliorated error in the charge); *Wesley*, 2021 WL

20

5931677, at *4 (similar).  However, because the referenced portion of the State's argument may have exacerbated risk of the missing incident-unanimity instruction, we conclude that this factor weighs in favor of egregious harm.

### (4.)  other relevant information in the record

As to the final factor, we review the record for any other relevant information requiring consideration.  During voir dire and after reading the charge, the trial court stated that the jury's verdicts must be unanimous—that all members must agree—but did not explain the specific unanimity required for each offense as to the particular act forming the basis of the offense.  This general-unanimity instruction did little to ensure specific-incident unanimity.  *See Arrington*, 451 S.W.3d at 841.

Other relevant evidence that we may consider is whether the jury rejected one of multiple counts or sent requests for clarification during deliberations.  *See Smith v. State*, 515 S.W.3d 423, 431 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd).  The jury did not reject any of the counts that were submitted in the jury charge, nor did it send any notes requesting clarification during its deliberations.  Thus, the final factor does not weigh in favor of or against a finding of egregious harm.  *See id.*

### (5.)  no egregious harm

Although the jury charge and parties' arguments suggest harm, the state of the evidence demonstrates a lack of actual harm because the case came down to an all-or-nothing determination.  *See Cosio*, 353 S.W.3d at 777–78 (reviewing similar unpreserved lack of incident-unanimity instruction for egregious harm).  By finding

21

Higgins guilty, the jury necessarily believed B.P.'s testimony and rejected Higgins's theory. *See Gomez v. State*, No. 14-17-00453-CR, 2018 WL 4781046, at *2–3 (Tex. App.—Houston [14th Dist.] Oct. 4, 2018, no pet.) (mem. op., not designated for publication) (holding state of the evidence weighed against egregious harm when charge lacked proper unanimity instruction but defendant categorically denied all allegations and guilty verdicts showed that the jury "necessarily disbelieved appellant's defensive evidence"). In light of our analysis of these four factors and after reviewing the appellate record, we cannot conclude that the charge error affected the very basis of the case, deprived Higgins of a valuable right, vitally affected the defensive theory, or made a case for conviction clearly and significantly more persuasive. We hold that Higgins was not egregiously harmed by the erroneous charge. *See Cosio*, 353 S.W.3d at 777–78.

Accordingly, having held that Higgins forfeited his untimely extraneous-notice complaint, that the evidence is sufficient to support his convictions, and that the erroneous jury charge did not result in egregious harm, we overrule his first issue.

### B. MISTRIAL

In his second issue, Higgins contends that the trial court abused its discretion by denying his motion for mistrial. Higgins maintains that a mistrial was warranted because a juror was contacted by a third party—who had been present in the courtroom during testimony—via a friend request on a social media platform and the contact amounted to prohibited communication with the jury in violation of Texas

22

Code of Criminal Procedure Article 36.22. Because Higgins failed to show a violation of Article 36.22, we disagree.

## 1. Applicable Law

A mistrial is appropriate for only "highly prejudicial and incurable errors," and a trial court's denial of a motion for mistrial is reviewed under an abuse-of-discretion standard. *Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003).

Article 36.22 of the Texas Code of Criminal Procedure, titled "Conversing with jury," states that "[n]o person shall be permitted to *converse with a juror* about the case on trial except in the presence and by the permission of the court." Tex. Code Crim. Proc. Ann. art. 36.22 (emphasis added); *see also* Tex. R. App. P. 21.3(f) (providing that a defendant must be granted a new trial when a juror has *talked with* anyone about the case) (emphasis added). Because the primary goal of Article 36.22 is to insulate jurors from outside influence, if a violation is shown, the effectiveness of possible remedies will be determined in part by whether the conversation influenced the juror. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). When a juror converses with an unauthorized person about the case, "injury to the accused is presumed[,]" and a mistrial may be warranted. *Robinson v. State*, 851 S.W.2d 216, 230 (Tex. Crim. App. 1991). However, to invoke this presumption, the defendant has the burden to show that the conversation involved matters concerning the defendant's trial. *Chambliss v. State*, 647 S.W.2d 257, 266 (Tex. Crim. App. 1983).

23

The Texas Court of Criminal Appeals has held that the phrase "to converse with a juror" in Article 36.22 does not encompass statements made to jurors to which the juror does not respond. *See Palasota v. State*, 460 S.W.2d 137, 141 (Tex. Crim. App. 1970) (because juror did not respond to remarks of unidentified woman asking how jurors could "sleep at night" and that "damned jury ought to be shot between the eyes," such remarks did not constitute "conversation" under article 36.22); *see also Badgett v. State*, No. 04–07–00364–CR, 2009 WL 142324, at *10 (Tex. App.—San Antonio Jan. 21, 2009, pet. ref'd) (mem. op., not designated for publication) (because juror did not respond to statement made by unidentified man who told juror that deceased victim had been "real nice young man," no "conversation" had occurred).

## 2. No Showing of an Article 36.22 Violation

On the second day of trial, the trial court was informed, via a note passed to the bailiff,[7] that a juror had received a friend request overnight on a social media platform from a third party who had been in the courtroom gallery during the first day of testimony. The juror explained in the note that "after receiving it, [she] did not answer it or respond in any way and reported it immediately [that] morning." The trial court instructed the juror, via the bailiff, to disclose if anyone else contacted her, and it prohibited the third party who sent the friend request from being in the courtroom for the remainder of the trial. The trial court did not individually speak

---

[7]The juror's note does not appear in the clerk's record.

with the juror or pursue further inquiry.[8] Higgins moved for a mistrial based on the unauthorized contact, and the trial court denied his request.[9]

Higgins had the burden to show that the third party's unauthorized contact was a conversation about the case on trial. *See* Tex. Code Crim. Proc. Ann. art. 36.22. We first address the nature of the contact and whether it arose to "conversation." Here, the juror's note regarding the unauthorized contact explained that she "did not answer it or respond in any way." Because the juror did not answer or respond, the third party's friend request did not constitute a "conversation." *See Palasota*, 460 S.W.2d at 141. Second, even liberally construing the friend request as a conversation between the juror and third party, there is no evidence that it involved matters concerning Higgins's trial.[10] *See Chambliss*, 647 S.W.2d at 266.

---

[8]Higgins did not request that the trial court speak with the juror to determine the impact, if any, of the third party's contact, nor has he complained that he was prevented from discovering the nature of the communication.

[9]Although the trial court did not grant Higgins's request for a mistrial, it offered a curative measure in the form of disallowing the third party's presence in the courtroom for the remainder of the trial.

[10]Citing to *McIntire v. State*, Higgins argues that we can presume harm even when the communication does not rise to the level of a full-blown discussion. 698 S.W.2d 652, 659 (Tex. Crim. App. 1985). However, in *McIntire*, the court reasoned that the third party's remark to the juror pertained to McIntire's case. Here, not only is there no conversation, but it is not apparent that the friend request pertained to Higgins's case. Thus, despite his reliance on *McIntire*, we are unconvinced that he invoked the presumption of harm.

25

A violation of Article 36.22 was not established. Higgins neither showed that the unauthorized contact was a conversation nor that it involved matters concerning his trial. It was incumbent upon Higgins to come forward and make some showing that the unauthorized contact was a conversation that pertained to the case. Absent such a showing, the presumption of harm did not arise, and the burden did not shift to the State to rebut that presumption.[11] We conclude that there was no presumption of harm because the unresponded-to friend request from a third party did not constitute a "conversation" and because the friend request was not shown to involve matters concerning Higgins's trial. Accordingly, we hold that the trial court did not abuse its discretion by denying his motion for mistrial, and we overrule Higgins's second issue.

### C. THE JURY CHARGE'S DEFINITIONS AND ELEMENTS

In his third and final issue, Higgins complains that in addition to the manner set forth in Subsection (b)(4) of the sexual assault statute—requiring proof of his

---

[11]Higgins also complains of the trial court's failure "to discuss the improper contact with the juror to determine the impact of the contact." Generally, the testimony of all participants in an unauthorized conversation is necessary to enable a trial court to determine whether injury or prejudice occurred as a result of a conversation between a juror and a third party. *See Horst v. State*, 758 S.W.2d 311, 315 (Tex. App.—Amarillo 1988, pet. ref'd). However, the trial court is not required to receive testimony from all of the participants in the conversation about the case until the defendant *first* shows that the conversation was about the case. *Stults v. State*, 23 S.W.3d 198, 208 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). Here, because Higgins failed to show that the contact was about his case, the trial court was not required to speak with the juror before denying his motion for mistrial.

26

knowledge of B.P.'s mental disability and inability to appraise the nature of the act—the jury charge authorized the jury to consider physical force and threats as alternative means of proving lack of consent. *See* Tex. Penal Code Ann. § 22.011(b)(1), (2), (4). This challenge raises two sub-issues.

In his sub-issues, Higgins asserts that (1) inclusion of the additional means of proof of lack of consent lessened the State's burden and permitted the jury to convict him of "uncharged offenses" and (2) their inclusion deprived him of unanimous jury verdicts. Because his sub-issues misinterpret the applicable law, Higgins's arguments lack merit.

## 1. No Charge Error

We must review "all alleged jury-charge error . . . regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). In reviewing a jury charge, we first determine whether error occurred; if not, our analysis ends. *Id.*

Higgins unpersuasively conflates the applicable statutory definitions of "without consent" and the elements of aggravated sexual assault of a disabled individual. As a predicate to our consideration of his third issue, it is necessary to discuss the elements of the charged offenses, the applicable statutory definitions, the language in the indictment, and the jury charge. As we will see, the trial court did not err by including the complained-of manners and means in the jury charge.

27

We first look at the elements of the charged offenses. As we discussed in our sufficiency analysis, a person commits aggravated sexual assault of a disabled individual, in relevant part, if the person intentionally or knowingly (i) causes the penetration of the anus or sexual organ of another person by any means, without that person's consent or (ii) causes the penetration of the mouth of another person by the sexual organ of the actor, without that person's consent, and the victim is a disabled individual. *See* Tex. Penal Code Ann. § 22.021 (a)(1)(A)(i), (a)(1)(A)(iii), (a)(2)(C). "Disabled individual" means a person older than 13 years of age who by reason of age or physical or mental disease, defect, or injury is substantially unable to protect himself from harm or to provide food, shelter, or medical care for himself. Tex. Penal Code Ann. § 22.021(b)(3). Whether the victim is a disabled individual is an element of the offense and an aggravating factor that increases the offense's degree from sexual assault, *id.* § 22.011, to aggravated sexual assault, *id.* § 22.021. *See Green v. State*, 607 S.W.3d 147, 153 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (discussing aggravating factors).

We next look at the statutory definitions of "without consent." In Texas, there are fourteen ways that a sexual assault occurs "without the consent of the other person." *See* Tex. Penal Code Ann. § 22.011(b)(1)–(14).[12] In pertinent part, Section

---

[12]The definitions of "without consent" are found in the Penal Code section for sexual assault. *See* Tex. Penal Code Ann. § 22.011(b)(1)–(14). An aggravated sexual assault under Section 22.021—which includes aggravated sexual assault of a disabled

22.011(b) of the Texas Penal Code provides that a sexual assault is without the consent of the other person if:

> (1) the actor compels the other person to submit or participate by the use of physical force, violence, or coercion;
>
> (2) the actor compels the other person to submit or participate by threatening to use force or violence against the other person or to cause harm to the other person, and the other person believes that the actor has the present ability to execute the threat;[or]
>
> . . . .
>
> (4) the actor knows that as a result of mental disease or defect the other person is at the time of the sexual assault incapable either of appraising the nature of the act or of resisting it[.]

*Id.* § 22.011(b)(1), (2), (4).

Next, we turn to the indictment's language, which alleges that Higgins,

> COUNT I
> then and there intentionally or knowingly cause the penetration of the anus of [B.P.], a person who was then and there [a] disabled individual, by [Higgins's] sexual organ, without the consent of the said [B.P.]
>
> COUNT II
> And . . . that [Higgins] . . . did then and there intentionally or knowingly cause the sexual organ of [B.P.] . . . a person who was then and there a disabled individual, to contact or penetrate [Higgins's] mouth . . ., without the consent of [B.P.].

---

individual—is without the consent of the other person if the aggravated sexual assault occurs under any of the same circumstances listed in Section 22.011(b).

Finally, we look at the jury charge, which mirrors the indictment's wording regarding the elements of the offenses. The application paragraph of the jury charge reads,

> Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt, that the Defendant, [Higgins], . . . did then and there intentionally or knowingly cause the penetration of the anus of [B.P.], a person who was then and there a disabled individual, by the Defendant's sexual organ, without the consent of the said [B.P.], then you will find the Defendant guilty of the offense of Aggravated Sexual Assault of a Disabled Individual, as charged in Count I of the indictment.
>
>    . . . .
>
> Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt, that the Defendant, [Higgins] . . . did then and there intentionally or knowingly cause the sexual organ of [B.P.], a person who was then and there a disabled individual, to contact or penetrate the mouth of Defendant, without the consent of the said [B.P.], then you will find the Defendant guilty of the offense of Aggravated Sexual Assault of a Disabled Individual, as charged in Count II of the indictment.

In the abstract portion of the jury charge, the trial court defined "without consent" using three of the fourteen methods: compulsion by force, compulsion by threat, and mental disease or defect. *See* Tex. Penal Code Ann. § 22.011(b)(1), (2), (4). Here lies the crux of Higgins's first sub-issue.

### a. Subsections (b)(1) and (b)(2) are Definitions—Not Plead Elements

Higgins's complaint stems from his belief that the jury charge does not mirror the allegations set out in the indictment. Specifically, Higgins contends that the State alleged that B.P.'s status as a disabled individual was the manner and means of

30

proving his lack of consent. With this belief, Higgins protests the jury charge's inclusion of two "unalleged manner and means" of proving lack of consent: compulsion by force and compulsion by threat. *See* Tex. Penal Code Ann. § 22.011(b)(1), (2). This argument misinterprets the applicable law.

The accused in a criminal case is guaranteed the right to demand the nature and cause of action against him. *DeVaughn v. State*, 749 S.W.2d 62, 67 (Tex. Crim. App. 1988). The charging instrument itself must convey adequate notice from which the accused may prepare his defense, and absent a notice-based motion to quash, it need allege only the statutory elements of the offense. *See State v. Carter*, 810 S.W.2d 197, 199 (Tex. Crim. App. 1991); *see also Geick v. State*, 349 S.W.3d 542, 546 (Tex. Crim. App. 2011). "Subject to rare exceptions, an indictment which tracks the language of the penal statute will be legally sufficient and the State need not allege facts which are merely evidentiary in nature." *DeVaughn*, 749 S.W.2d at 67.

Here, the indictment charged Higgins with aggravated sexual assault of a disabled individual, and therefore, the State had to prove that B.P. was a disabled individual *as an element of the charged offenses. See* Tex. Penal Code Ann. § 22.021(a)(2)(C). Elements of the offense that the State must prove differ from the statutorily defined ways that those elements can be proven. *See State v. Barbernell*, 257 S.W.3d 248, 255 (Tex. Crim. App. 2008) (discussing elements of an offense and the definitions that provide alternative manner or means in which the act can be committed).

Higgins conflates this concept. Neither count one nor count two in the indictment specified the manner or means by which the State alleged that Higgins's sexual assault of B.P. was without his consent, and Higgins did not file a motion to quash the indictment to insist on "a specific allegation of what the State [would] rely upon to convict." *Amaya v. State*, 551 S.W.2d 385, 387 (Tex. Crim. App. 1977).

In the most basic sense, to obtain a conviction for aggravated sexual assault of a disabled individual, the State had to prove, among other things, that (1) B.P. was a disabled individual and (2) he did not consent to Higgins's act of sexual assault. In a prosecution for aggravated sexual assault of a disabled individual, the State is not confined, unless otherwise pled in the indictment, to prove lack of consent based solely on a victim's inability to consent due to mental disease or defect. Rather, the State may employ any of the fourteen manners and means as prescribed by Section 22.011 that comport with the evidence.

If Higgins contends that the State bound itself to Subsection 22.011(b)(4)—incapacity to consent due to a mental disease or defect—through the wording in its indictment, that argument is unfounded. In both his brief and at oral argument, Higgins substantially relied upon the holding in *Castaneda-Lerma v. State*, which is distinguishable from this appeal. No. 04-07-00479-CR, 2008 WL 2515700, at *1 (Tex. App.—San Antonio, June 25, 2008, pet. dism'd) (mem. op., not designated for publication).

In *Castaneda-Lerman*, the defendant was charged with aggravated sexual assault, and the indictment alleged that he

> intentionally or knowingly sexually assault[ed] [A.T.] by causing his sexual organ to penetrate [her] female sexual organ . . . without [her] consent, and the said . . . CASTANEDA–LERMA knew that as a result of mental disease and defect [A.T.] was at the time of said sexual assault incapable either of appraising the nature of the act or of resisting it.

*Id.*

The indictment alleged that Castaneda-Lerman's sexual assault was without consent based on the manner found in Subsection 22.011(b)(4) of the Texas Penal Code: incapacity to consent due to a mental disease or defect. *Id.* And yet, at Castandeda-Lerman's trial, the jury charge explained that "[s]exual assault is without the consent of the other person if the actor compels the other person to submit or participate by the use of physical force or violence; or the actor knows that as a result of mental disease or defect the other person is at the time of the sexual assault incapable either of appraising the nature of the act or of resisting it." *Id.* at 2. Thus, unlike the indictment which required the State to prove lack of consent based on Subsection (b)(4), i.e., lack of mental capacity to consent, the jury charge permitted the State to prove lack of consent under either that subsection or Subsection (b)(1), i.e., consent compelled by physical force or violence. *Id.*

When pled, a statutory definition becomes an element of the offense that the State must prove. *Geick*, 349 S.W.3d at 547–48. Because the State pled a statutory definition for lack of consent in its indictment against Castandeda-Lerman, the jury

charge erroneously permitted the jury to convict under a statutory basis for proving lack of consent that was not alleged in the indictment. No such circumstance is present in Higgins's appeal.

Higgins's case is more akin to *Fongang v. State.* No. 07-11-00358-CR, 2013 WL 5460002, at *5 (Tex. App.—Amarillo Sept. 30, 2013, no pet.) (mem. op., not designated for publication). In *Fongang*, the Amarillo Court of Appeals determined that the manner in which the sexual assault is without the complainant's consent is not an element of the offense required to be included in the indictment. *Id.* at *2. We agree with the Amarillo court's analysis, and conclude that in this case, given the absence of a notice-based motion to quash, the State was not required to allege in the indictment the specific manner in which Higgins's sexual assault of B.P. was without his consent. Therefore, a hypothetically correct jury charge would have authorized conviction if the jury found that the sexual assault was without B.P.'s consent for any of the statutory reasons supported by the evidence.[13]

The State's indictment tracked the language of Section 22.021 and did not allege which definition—manner or means—that the State would rely upon at trial to prove that Higgins's conduct was without B.P.'s consent. The indictment merely

_____

[13]We note that the trial court's definitions of "without consent" were confined to the abstract portion of the charge, and the three manner and means were not incorporated in the application paragraph. Instead, the application paragraph mirrored the language found in the statute and the indictment: that Higgins's conduct was without B.P.'s consent.

34

alleged that Higgins's conduct was "without the consent of the said [B.P.]." We are unpersuaded that the language of the State's indictment confined it to proving B.P.'s lack of consent based on mental disease or defect. Having concluded that the State's indictment did not plead a specific method of proving lack of consent, we next consider whether, in light of the evidence, the trial court erred by including the definitions found in Subsections (b)(1) and (b)(2) for "without consent."[14] Tex. Penal Code Ann. § 22.011(b)(1), (b)(2).

### b. Evidence Supported the Inclusion of Definitions from Subsections (b)(1) and (b)(2)

Article 36.14 of the Texas Code of Criminal Procedure mandates that the trial court "shall . . . deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case . . . ." Tex. Code Crim. Proc. Ann. art. 36.14. A proper definition of a statutorily defined term applicable to the prosecution is considered to be "law applicable to the case." *Fraser v. State*, 593 S.W.3d 883, 887 (Tex. App.—Amarillo 2019, pet. ref'd). "The purpose of the jury charge is to inform the jury of the applicable law and guide them in its application to the case." *Beltran De La Torre v. State*, 583 S.W.3d 613, 617 (Tex. Crim. App. 2019) (quoting *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996)). This "requires that the jury be instructed concerning each element of the offense or offenses charged" and requires "that each

---

[14]Higgins does not contest the trial court's definition of "without consent" from Subsection 22.011(b)(4)—mental disease or defect—thus, we do not address the propriety of its inclusion. *See* Tex. R. App. P. 47.1

35

statutory definition that affects the meaning of an element of the offense must be given to the jury." *Murphy v. State*, 44 S.W.3d 656, 661 (Tex. App.—Austin 2001, no pet.). Although the trial court is obligated to include in the jury charge statutory definitions that affect the meaning of elements of the crime, the charge must also be tailored to the facts presented at trial and include only the portions of a statutory definition that are supported by the evidence. *Limonta-Diaz v. State*, 593 S.W.3d 447, 454 (Tex. App.—Austin 2020, pet. ref'd).

Because the State did not plead a specific method of proving lack of consent in the indictment, the trial court was permitted to hear the evidence—as it was developed during the trial—and fashion the appropriate definitions in the jury charge. *See id.* Here, B.P. testified that he was smaller than Higgins and that Higgins took him to the ground, got on top of him, and pulled down his pants during the sexual assault in his home. B.P. further testified that he was scared during the assaults and that Higgins told him "that he'd kill [B.P.] if [B.P.] told anybody."[15] B.P.'s sister similarly

---

[15]We are unmoved by Higgins's attacks on the inclusion of Subsection 22.011(b)(2). Higgins argues that "the record is completely absent evidence of any threats to harm [B.P.] made by [Higgins] other than [B.P.'s] testimony about the threats being made." As we earlier held, B.P.'s testimony—standing alone—was sufficient evidence to support Higgins's convictions. Likewise, we conclude that B.P.'s testimony that Higgins made threats to him, even absent corroborating evidence, was sufficient for the trial court to include Subsection (b)(2) in the jury charge. *See Ouellette v. State*, 353 S.W.3d 868, 870 (Tex. Crim. App. 2011) (affirming submission of particular statutory definition of intoxication because "while evidence that the appellant was intoxicated by drugs was circumstantial and not obviously overwhelming, it is nonetheless present in the record"). Higgins further asserts that there is no evidence to support the inclusion of (b)(2) because B.P.'s testimony about

testified that B.P. appeared petrified and scared. *C.f. Horne v. State*, 46 S.W.3d 391, 394 (Tex. App.—Fort Worth 2001, pet. ref'd) (holding sufficient evidence of force when defendant pinned the victim down so she was unable to move); *Bannach v. State*, 704 S.W.2d 331, 333 (Tex. App.—Corpus Christi–Edinburg 1986, no pet.) (holding force evidence sufficient when defendant grabbed victim from the sidewalk with excessive force and forced her head down); *Brown v. State*, 580 S.W.3d 755, 763-64 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd) (holding force evidence sufficient when victim testified defendant forcefully held her down by the neck with one hand and undressed her with the other hand).

B.P. testified that Higgins used and threatened to use physical force in the course of sexually assaulting him. We conclude that the trial court could have reasonably determined that the evidence supported the inclusion of statutory definitions from Subsections (b)(1) and (b)(2) for "without consent" because it raised fact issues as to whether B.P. was compelled to submit by physical force or threats. Accordingly, we conclude that the trial court did not err by including those statutory definitions in the jury-charge instruction defining "without consent."

---

the verbal threats was only related to the conduct that transpired in the long-haul truck. However, the record does not support this claim. B.P. testified that Higgins threatened to kill him if he disclosed "what happened." B.P.'s testimony was untethered to a specific location or incident and not clearly confined to conduct that occurred just inside the long-haul truck.

## 2. Unanimity not Required for Manner & Means

Higgins's second sub-issue complains that the inclusion of Subsections (b)(1) and (b)(2) definitions risks the jury's unanimity. This argument also lacks merit.

There is no unanimity requirement regarding the manner and means by which Higgins overcame B.P.'s lack of consent. *See Dickson v. State*, Nos. 2-08-050-CR, 2-08-051-CR, 2009 WL 976019, at *9 (Tex. App.—Fort Worth Apr. 9, 2009, pet. ref'd) (per curiam) (not designated for publication) (explaining no unanimity requirement exists regarding the "manner and means" disjunctive elements in the jury charge how defendant overcame complainant's lack of consent); *see also Marinos v. State*, 186 S.W.3d 167, 174–75 (Tex. App.—Austin 2006, pet. ref'd) (although unanimity is required regarding whether the charged aggravated bodily injury assault or the aggravated assault by threat was committed, no unanimity is required regarding the specific manner and means employed).

The requirement of jury unanimity is not violated by a jury charge that presents the jury with the option of choosing among various alternative manner and means of committing the same statutorily defined offense. *See Jourdan v. State*, 428 S.W.3d 86, 94 (Tex. Crim. App. 2014); *see also Pizzo v State*, 235 S.W.3d 711, 715 (Tex. Crim. App. 2007). A "jury must unanimously agree about the occurrence of a single criminal offense, but they need not be unanimous about the specific manner and means of how that offense was committed." *Young v. State*, 341 S.W.3d 417, 422 (Tex. Crim.

38

App. 2011); *see Landrian v. State*, 268 S.W.3d 532, 535 (Tex. Crim. App. 2008) ("The jury must agree that the defendant committed one specific crime. That does not mean, however, that the jury must unanimously find that the defendant committed that crime in one specific way or even with one specific act." (internal citations omitted)); *Miranda v. State*, 391 S.W.3d 302, 310 (Tex. App.—Austin 2012, pet. ref'd) ("Jury unanimity is required with respect to all essential elements of the offense at issue; however, the jury need not unanimously agree on the specific method of committing a single offense.").[16]

The scenarios listed in Texas Penal Code Section 22.011(b) are alternative manners and means the State may prove a complainant's lack of consent—the scenarios are not different and distinct criminal offenses requiring jury unanimity. *Brown*, 580 S.W.3d at 765. "There is a 'crucial distinction' between a fact that is a specific *actus reus* element of the crime and one that is but the means to the

---

[16]To avoid the potential for any confusion regarding our analysis of unanimity in Higgins's first and third issues, we note that this third issue—unanimity for the manner and means of committing an offense—is distinguishable from our discussion in Higgins's first issue. In his first issue, we addressed the concern of nonunanimous verdicts due to the State presenting evidence that Higgins committed the charged offenses on multiple but separate occasions. For each offense alleged, the jury had to agree upon a single and discrete incident that would constitute its commission. *See Cosio*, 353 S.W.3d at 771. Here, in the third issue, we address the manners and means of proving the single and discrete incident. While the jury must be unanimous in its determination of a discrete incident, there is no such unanimity requirement in the determination of the manner and means by which such an incident may be proven, when, as here, the unchallenged indictment alleged no manner and means. *See Landrian*, 268 S.W.3d at 535.

39

commission of a specific *actus reus* element." *Marinos*, 186 S.W.3d at 175. Thus, the State may allege different manners and means of committing a single offense, and the jury is not required to agree upon a single manner or means. *Id.* "The unanimity requirement is not violated when the jury has the option of choosing between alternative modes of commission." *Pizzo*, 235 S.W.3d at 715.

The three alternative manners and means of proving the lack of B.P.'s consent included in the abstract portion of the jury charge are not specific *actus reus* elements; therefore, jury unanimity was not required regarding the "without consent" element. *See Marinos*, 186 S.W.3d at 175; *Dickson*, 2009 WL 976019, at *7–9. The jury only needed to find that one manner and means occurred beyond a reasonable doubt to find that Higgins's conduct was nonconsensual, and the jury did not have to agree on which manner and means. *See Brown*, 580 S.W.3d at 762–63. We conclude that the trial court's inclusion of definitions from Subsections (b)(1) and (b)(2), in addition to Subsection (b)(4), did not violate the constitutional unanimity requirement.

For both sub-parts of Higgins's third issue, we hold that the trial court did not err in its inclusion of definitions from Subsections (b)(1) and (b)(2) in the jury charge. Because there is no charge error, our analysis ends. *See Kirsch*, 357 S.W.3d at 649. Accordingly, we overrule Higgins's third issue.

40

## IV.  CONCLUSION

Having overruled Higgins's three issues, we affirm the trial court's judgment.

/s/ Brian Walker

Brian Walker
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  June 26, 2025